NO. 25-2322

# United States Court of Appeals
### for the

# Fourth Circuit

JOHN D. SULLIVAN

Plaintiff-Appellant,

THE UNIVERSITY OF NORTH CAROLINA
HEALTH CARE SYSTEM

Defendant-Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF NORTH CAROLINA IN CASE
NO. I :22-CV-847, HONORABLE CATHERINE C. EAGLES, CHIEF DISTRICT JUDGE

## OPENING BRIEF OF APPELLANT

John D. Sullivan, Pro Se
4310 Falmouth Drive, 102A
Longboat Key, FL 34228
(919)-923-4632
Plaintiff-Appellant
UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

x In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by all parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.) x In criminal and post-conviction cases, a corporate defendant must file a disclosure statement. x In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.) x Any corporate amicus curiae must file a disclosure statement.

x Counsel has a continuing duty to update the disclosure statement.

No. 25-2322

Caption: John D. Sullivan v. The University of North Carolina Health Care System

Pursuant to FRAP 26.1 and Local Rule 26.1,

___

John D. Sullivan (name of party/amicus)

who is Appellant, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity        YES ONO

2.      Does party/amicus have any parent corporations? YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? YES ONO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? DYES ONO If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    DYES@ NO If yes, identify any publicly held member whose stock or equity value could be affected , substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding? DYES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?    DYES ONO
    If yes, the United States, absent good cause shown, must list (l) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _____

John D. Sullivan
Pro Se Plaintiff-Appellant
January 30, 2026

CASES AND LAW CITED

United States Supreme Court

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)

Ames v. Ohio Dep't of Youth Servs., No. 23-1039, 605 U.S.   (2025) (Thomas, J., concurring)

Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009)

Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000)

Tolan v. Cotton, 572 U.S. 650 (2014)

Fourth Circuit

Barnes v. Charles County Public Schools, 747 F. App' x 115 (4th Cir. 2018)

Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639 (4th Cir. 2002)

Elam v. Early, 138 F.4th 804 (4th Cir. 2025)

Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208 (4th Cir. 2016)

Hawkins v. PepsiCo, Inc., 203 F.3d 274 (4th Cir. 2000)

Hollis v. Morgan State Univ., 149 F.4th 486 (4th Cir. 2025)

Hux v. City of Newport News, 451 F.3d 311 (4th Cir. 2006)

Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562 (4th Cir. 2015)

Laber v. Harvey, 438 F.3d 404 (4th Cir. 2006) (en banc)

Landholt v. Corley, 149 F.4th 486 (4th Cir. 2025)

Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289 (4th Cir. 2010)

Wannamaker-Amos v. Purem Novi, Inc., 153 F.4th 369 (4th Cir. 2025)

Westmoreland v. TWC Admin. LLC, 924 F.3d 718 (4th Cir. 2019)

Other Circuits

Cianci v. Pettibone corp., 152 F.3d 723 (7th Cir. 1998)

Ginen v. McRentals, Inc., 337 F.3d 979 (8th Cir. 2003)

Caldrone v. Circle K Stores, Inc., No. 24-1432 (9th Cir. Oct. 3, 2025)

Statutes and Rules

29 U.S.C. 621 et seq. (Age Discrimination in Employment Act)

28 U.S.C. 1291

28 U.S.C. 1331

Federal Rule of Civil Procedure 15

Federal Rule of Civil Procedure 56

## STATEMENT OF JURISDICTION

This appeal arises from the United States District Court for the Middle District of North Carolina's final order granting summary judgment in favor of The University of North Carolina Health Care System ("Appellee"), on John D. Sullivan's (Appellant) claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 621 et seq. The district court had subject-matter jurisdiction under 28 U.S.C. 1331. Final judgment was entered on August 27, 2025, and Appellant timely filed a notice of appeal. This Court has jurisdiction pursuant to 28 U.S.C. 1291.

## ISSUES PRESENTED FOR REVIEW

1. Whether the district court improperly applied well settled Fourth Circuit law in its summary judgment ruling in favor of Appellee.

2. Whether the district court abused its discretion by denying Appellant leave to amend his complaint to add a retaliation claim where the amendment was based on facts developed during discovery and would not have prejudiced Appellee.

3. Did the district court commit error by granting summary judgment on Appellant's ADEA failure-to-promote claim where the record contains genuine issues of material fact as to pretext.

4. Did the district court improperly weigh evidence and draw inferences in favor of the Appellee contrary to the summary judgment standard and controlling Fourth Circuit precedent.

## STATEMENT OF THE CASE

Summation

This appeal turns on whether a court may grant summary judgment by crediting an employer's explanations, discounting evidence of irregularities and shifting reasons, and resolving credibility disputes in the employer's favor. Viewing the record de novo and with all reasonable inferences drawn for Sullivan, a reasonable jury could find that Appellee's stated reasons for denying him a promotion were pretextual and that age was the but-for cause of the decision. The district court's

contrary ruling rests on a misapplication of Fourth Circuit precedent and an impermissible weighing of evidence reserved for the jury.

A. Nature of the Case

This is an appeal from a final judgment of the United States District Court for the Middle District of North Carolina granting summary judgment to Appellee, The University of North Carolina Health Care System ("Appellee"), on Appellant John

D. Sullivan's (Sullivan) claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 621 et seq., and denying leave to amend the complaint to add a retaliation claim. Sullivan alleged that Appellee failed to promote him because of his age and that the record contained substantial evidence of pretext requiring resolution by a jury. The district court instead credited Appellee's explanations and drew inferences in the employer's favor, contrary to the governing summary judgment standard.

B. Course of Proceedings and Disposition Below

Sullivan filed this action in October 2022. After dismissal of a demotion claim on exhaustion grounds, Appellee moved for summary judgment on the remaining ADEA failure-to-promote claim.

On September 29, 2025, the district court granted summary judgment, holding that although Sullivan established a prima facie case, he failed as a matter of law to show pretext. In doing so, the court relied on Barnes v. Charles County Public Schools, Hawkins v. PepsiCo, Hux v. City of Newport News, and Elam v. Early. The court also denied Sullivan leave to amend his complaint to add a retaliation claim, concluding he failed to show good cause under Rule 16(b). Final judgment was entered for Appellee, and this appeal followed.

## C. Short Factual Summary

### 1. Sullivan 's Experience and Role

Sullivan began working for Appellee in 2017 in the Supply Chain department. He was hired to build and lead the contracting function, supervised staff, and developed materials still used by Appellee. At that time, Sullivan had over twenty years experience in Strategic Sourcing and Supply Chain activities, managed spend in excess of $1.6B USD, departmental budgets over $2M USD and organizations spread throughout the world. Though new to the healthcare industry, Sullivan was a "Distinguished Contributor" and received outstanding performance ratings of 4.4;4.4; and 4.8 out of 5 in 2017/18 and 19 respectively. At all relevant times, he possessed decades of supply chain and procurement experience and a record of organizational development. In 2019, Appellee reorganized the Supply Chain

department, demoting several senior employees over age 50, including Sullivan.

Although the demotion claim is not before this Court on the merits, the

surrounding events provide context for the promotion decision and Appellee's

explanations. Three of the five employees demoted over 50 were Jeff Yardley

(65/66), Sullivan (59/60) and Lori Graham (53). None of these three retained or

re-acquired their prior positions and the positions were eventually awarded to

people at least ten (10) years younger in each instance.

## 2. The 2019 Posting and Its Cancellation

In August 2019, Appellee posted a System Director of Strategic Sourcing position.

Sullivan applied. The position was never filled and was later cancelled. Appellee

A offered inconsistent explanations for this outcome, including lack of time to

interview, deference to a future vice president, and alleged deficiencies in

Sullivan's qualifications. All reasons that conflicted with contemporaneous

documents and the job posting itself.

## 3. The 2020—2021 Promotion Decision

In December 2020, Appellee reposted a substantially similar position titled

Director of Sourcing and Contracting and deemed Sullivan qualified to interview.

At that time, Sullivan was 59 years old. The selected candidate, Josh VanDyck

(J.VD), was approximately 43/4 years old and had substantially less supply chain, supervisory, and Appellee experience.

The interview process contained multiple irregularities. Not all candidates were interviewed by the same panel members; one panelist conducted a solo interview of J.VD; interview questions were never produced; scoring deviated from Appellee's Hiring for Excellence process; and scores were aggregated in a manner that favored J.VD. Several evaluators rated Sullivan and J. VD identically across core competencies, while evaluators within Sullivan's reporting chain consistently scored him lower.

Appellee asserted that J. VD was selected because he scored higher and was a better fit. The record, however, showed close or identical scores in many categories, reliance on subjective impressions outside the interview process, an interview panel that included for J.VD: three peers, his direct manager, a manager from another department, a direct report of J.VD and that J.VD lacked the same experience previously cited as a reason to reject Sullivan.

4. Evidence ofPretext

Sullivan presented evidence of pretext including shifting explanations, inconsistent application ofjob description criteria, deviation from established hiring procedures, heavy reliance on subjective assessments, and a nearly 20-year

age disparity between Sullivan and the selected candidate. All this against a backdrop where Appellee's Human Resources Manager supporting the supply chain team back in 2019 warned the Vice President that "[t/he risk you run is the selection process. " Doc. 88, Attachment/Exhbt 6 no scanned page number but aka DEF

DOC 4947. Taken together, this evidence would allow a reasonable jury to disbelieve Appellee's stated reasons and find age discrimination.

5. Motion to Amend

During discovery, Sullivan learned that a senior decisionmaker involved in the promotion process was aware of his prior age-discrimination complaint and participated in discussing with and knew of Sullivan's explaining adverse actions. He moved to amend his complaint to add a retaliation claim based on those facts. The district court denied leave, finding no good cause under Rule 16(b), despite the absence of prejudice to Appellee and the development of the claim through discovery.

## SUMMARY OF THE ARGUMENT

The district court's judgment should be reversed because it misapplied settled Fourth Circuit law governing summary judgment, improperly resolved disputed

facts and credibility issues, and denied leave to amend in circumstances that constituted an abuse of discretion.

## I. The district court misapplied controlling Fourth Circuit precedent and the summary judgment standard.

The district court relied on Barnes v. Charles County Public Schools, Hawkins v. PepsiCo, Hux v. City of Newport News, and Elam v. Early in a manner inconsistent with their holdings. Rather than applying these cases as limits on judicial fact-finding, the court treated them as authority to credit the employer's explanations and defer to asserted "business judgment." In doing so, the court weighed competing evidence, discounted procedural irregularities, shifting explanations, and resolved credibility disputes in Appellee's favor, which is expressly prohibited at summary judgment.

## 11. The district court erred in granting summary judgment on the ADEA failure to-promote claim despite substantial evidence of pretext.

The record contained ample evidence from which a reasonable jury could find pretext, including inconsistent and shifting explanations for the cancelled 2019 posting and the later promotion decision, deviation from established hiring procedures, irregularities in interview administration and scoring, reliance on subjective assessments, and a nearly twenty-year age disparity between Sullivan

8

and the selected candidate. Viewed collectively and with all reasonable inferences drawn in Mr. Sullivan's favor, this evidence would permit a jury to disbelieve Appellee's stated reasons and conclude that age was the but-for cause of the promotion decision.

111. The district court improperly elevated the ADEA's "but-for" causation standard at the summary judgment stage.

Although the ADEA requires proof of but-for causation at trial, that requirement does not alter the Rule 56 inquiry. At summary judgment, the question is not whether the plaintiff has conclusively proven discrimination, but whether a reasonable jury could do so. By requiring Mr. Sullivan to negate UNC Health's explanations and by resolving factual disputes itself, the district court imposed a burden higher than the law permits.

IV. The district court abused its discretion by denying leave to amend to add a retaliation claim.

The district court further erred by denying Mr. Sullivan leave to amend his complaint to add a retaliation claim. The proposed amendment was based on facts developed during discovery, arose from the same core operative facts already at issue, and would not have prejudiced Appellee. Denial of leave under these

circumstances was inconsistent with Rule 15's liberal amendment policy and reflected an improper application of Rule 16's good-cause standard.

This case presents a classic summary judgment erred requiring reversal. In sum, the district court credited the employer's version of events, resolved disputed facts, and drew inferences against the non-moving party. Under de novo review and controlling Fourth Circuit precedent, those determinations must be made by a jury. The judgment should therefore be reversed and the case remanded

for trial.

## STANDARD OF REVIEW

This Court reviews a grant of summary judgment de novo, viewing the evidence and drawing all reasonable inferences in favor of the non-moving party. Hollis v. Morgan state Univ., No. 24-1476 (4th Cir. May 2025). Landholt v. Corley, 149 F.4th 486, 489 (4th Cir. 2025). Summary judgment is appropriate only where "no reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In employment discrimination cases, summary judgment is used "sparingly" because proof of discriminatory intent often depends on circumstantial evidence and credibility determinations reserved for the jury. Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289,

10

294-95 (4th Cir. 2010).

Although the ADEA requires proof that age was the "but-for" cause of the challenged decision, Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177-78 (2009), that standard does not alter the summary-judgment inquiry. At this stage, the question is not whether the plaintiff has conclusively proven discrimination, but whether a reasonable jury could so find. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

## STATEMENT OF FACTS

### 1. 2018—2019 Reorganization and Demotions

In October 2018, Marty Ferguson (age 53), Vice President of Supply Chain, resigned. William Bryant assumed the role on an interim basis and, in December 2018, proposed a reorganization. That reorganization resulted in the demotion of three employees over age 50: Jeff Yardley (65/66), Sullivan (58), and Lori Graham (53/54). These demotions occurred in June 2019; salary reductions followed effective December 28, 2019. The affected employees were told they could reapply for their positions.

Appellee replaced Yardley with Ryan Rotar (Rotar) (age 38) as Executive Director on or about April 25, 2019. Doc. 88-5 @4, pp 4-5.

### 2. August 2019 Posting and Non-Selection

11

On August 19, 2019, Rotar posted the System Director of Strategic Sourcing

position. Sullivan applied. The position was never filled, though the reasons are

disputed. Rotar testified interviews were not conducted due to workload and

"time management." Doc. 88-2 @ p. 83:9-14. Nevertheless, Rotar and Bryant

remained actively involved in scheduling interviews and assessing candidates

through at least November 2019, contradicting Rotar's explanation. Id.

At some point, Sullivan and another internal candidate, Kathy Hartnett, were

marked "unqualified," as was Teresa Root. Id. No explanation was given as to why

Sullivan was deemed unqualified in 2019 yet considered qualified when the same

position was reposted in December 2020.

In March 2020, Sullivan was informed the position had been "cancelled." Only

later, in October 2020, was he provided explanations that suggested shifting and

inconsistent rationales. Doc. 88-3 @ p. 83:9-14.

3. Bryant's Continued Involvement

Appellee asserts Bryant had no involvement after Clinton Hazziez became Vice

President in February 2020. The record contradicts this assertion. On March 5,

2020, Patty White emailed Hazziez outlining Bryant's plans for the Supply Chain

organization, supporting an inference that Bryant's restructuring decisions

remained operative. Doc 88-5@ p.17.

12

Further, in an October 2020 discussion memorialized by Candice Glass—an HR employee reporting within Bryant's supervision—Hazziez and others defended the 2019 reorganization and cited Sullivan's alleged lack of value-analysis experience as justification for his non-selection. Id. Appellee's claim that Bryant was uninvolved is further undermined by a July 8, 2020 email concerning shared services staffing decisions. Doc. 88-5 @ p. 18.

## 4. Hazziez's Tenure and Structural Inconsistencies

Despite cancelling the August 2019 posting, Hazziez added an Executive Director position to the organizational chart, filled by Ana-Elis Perry. This contradicted Appellee's claim that the reorganization aimed to "flatten" management. Rotar Perry lacked sufficient supply chain experience. Doc. 88 - 2 @p. 91:17-p.102:13.

Rotar described himself as the most "tenured" and "expert" member of Supply Chain leadership. Doc. 88 2@ p.100:1 3—9. Yet Rotar was 42 at the time of his deposition and had only completed his degree in 2013—four years before Sullivan joined UNC. Doc 88-2 @**6:l:3–5; 7:16–11:2.**

## 5. Events Preceding Sullivan's October 2020 Complaint

In June 2020, UNC announced the formation of a DEI Council and released a 112-page internal survey report addressing workplace culture. The Executive Summary referenced "white patriarchy" but did not mention age as a protected

category. Sullivan Doc 88-5 @ P 14-15. From this omission, an inference may be drawn that age discrimination was not recognized or prioritized.

In July—August 2020, Hazziez made interim appointments placing Teresa Root and

J.VD in supervisory roles over Sullivan. These assignments mirrored the prior structure when Sullivan and Rotar were peers. Doc.88-5@p.17 Par. 47. J.VD's interim appointment, despite his lesser experience and lack of value-analysis background, supports an inference that he was being positioned for permanent selection. Furthermore, Sullivan was never informed nor consulted about the interim position. Doc. 88-3 @ pp. 135 1.22-136 1.2. See also Exhibit 13 to 88-3

On August 4, 2020, Sullivan contacted UNC's Executive Director of DEI, Aleyah Pankey, to report age discrimination. Pankey declined to address the issue and referred Sullivan to HR Shared Services under Bryant's supervision. Doc. 88-3; Exhibits 15-18 inclusive.

In October 2020, following a meeting with Glass and Hazziez, Sullivan requested written reasons for his demotion and non-selection. Glass cited organizational "flattening" and elimination of executive roles. This explanation was contradicted by Hazziez's addition of Executive Director positions. Doc. 88-5@p.17, "113. See

14

Glass also asserted Sullivan lacked value-analysis skills, despite the August 2019 posting not requiring such experience and despite Sullivan being deemed qualified when the same role was reposted in December 2020. Doc. 88-3; Exhibits 15-18 inclusive.

## 6. December 2020 Posting and Interview Process

The position was reposted on December 10, 2020, following internal discussions explicitly referencing Sullivan's age-discrimination complaints. Doc. 88-5 @ p. 19-20"50-51.

Three candidates were interviewed: Sullivan, J. VD and external applicant Shawn Kirwan. Doc. 88-5 @ p.19-22; "150—59, Exhbts 8, 10, 11. Appellee exclusively on the HFE panel interview scores, though those scores reflected significant inconsistencies. Several interviewers gave Sullivan and J. VD identical ratings across multiple competencies. Id. Rotar nevertheless characterized J. VD'S scores as "significantly higher," a claim not supported by the underlying data. Id. Moreover, Kirwan was not interviewed by one panelist, yet his raw scores were compared without adjustment and skewed the results in VanDyck's favor. Id.

## 7. Post-Selection Developments

After Hazziez's departure, the organizational structure reverted to one resembling the pre-2019 configuration, with VanDyck occupying a role equivalent to that

15

previously held by Yardley. Doc 88-2 Rotar Dep. 274:12—284:24. Rotar further

testified he was surprised by Hazziez's behind-the-scenes involvement in the hiring

process, having been led to believe he was the decision-maker. Doc. 88-2; pages

224-225 inclusive.

STANDARD OF REVIEW

5. This Court reviews a district court's grant of summary judgment de novo,

applying the same standard as the district court. See, e.g., Hollis v. Morgan

State Univ., No. 24-1476 (4th Cir. May 2025). This Court reviews a grant of

summary judgment de novo, viewing the evidence and drawing all reasonable

inferences in favor of the non-moving party. Landholt v. Corley, 149 F.4th 486,

489 (4th Cir. 2025). Summary judgment is appropriate only where "no reasonable

jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986). In employment discrimination cases, summary

judgment is used "sparingly" because proof of discriminatory intent often depends

on circumstantial evidence and credibility determinations reserved for the jury.

Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 294-95 (4th Cir. 2010).

Although the ADEA requires proof that age was the "but-for" cause of the

challenged decision, Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177-78 (2009),

that standard does not alter the summary-judgment inquiry. At this stage, the

question is not whether the plaintiff has conclusively proven discrimination, but whether a reasonable jury could so find. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). Summary judgment is appropriate only where, viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in his favor, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

# ARGUMENT

1. The district court improperly applied well settled Fourth Circuit law in its summary judgment ruling in favor of Appellee.

   The district court misapplied settled Fourth Circuit precedent in granting summary judgment for Appellee. Although courts may not sit as "superpersonnel departments," they likewise may not transform contextual, factintensive precedent into categorical rules that permit weighing evidence, resolving credibility disputes, or discounting circumstantial proof of pretext at summary judgment. That is precisely what occurred here through the district court's misapplication of Barnes, Hawkins, Hux, and Elam.

       a. The District Court's reliance on Barnes v. Charles County Public Schools was misplaced and is thus legal error and reversible.

Appellee's primary response to Sullivan's evidence of pretext—and the district court's principal justification for summary judgment—rests on Barnes v. Charles County Public Schools, 747 F. App'x 115 (4th Cir. 2018) (per curiam). The district court treated Barnes as dispositive. That treatment was legal error. Barnes is factually distinguishable in a significant and outcome-determinative respect. In Barnes, this Court emphasized that all candidates were evaluated using the same interview questions and criteria. 747 F. App'x at 1 17—18. The Court relied on

that uniformity to reject the plaintiff's claim that the interview process was manipulable or pretextual. Indeed, the use of identical questions was central to Barnes's conclusion that no inference of discrimination could be drawn from the interview process.

Here, by contrast, there is no record evidence that Appellee's interview panel used the same interview questions for each candidate. Appellee did not produce the interview questions, nor any documentation establishing that candidates were asked identical or even comparable questions. Instead, the record reflects incomplete score sheets, missing documentation, and panelists who did not interview all candidates. Doc. 88-5 @ p.22-23 58—61.

This absence of evidence sharply distinguishes this case from Barnes. Where an employer cannot demonstrate that candidates were evaluated using the same questions, a reasonable jury may infer that the process was subjective, inconsistent, or susceptible to manipulation—particularly where, as here, the plaintiff was substantially older and more experienced than the selected candidate. See Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 298—99

(4th Cir. 2010).

Barnes does not establish a categorical rule that procedural irregularities are irrelevant. To the contrary, it expressly recognizes that such irregularities

19

support an inference of discrimination where there is "some evidence that the irregularity directly and uniquely disadvantaged a protected employee." 747 F. App'x at 118. By nonetheless concluding that "none of these supposed irregularities give rise to an inference of pretext," the district court converted Barnes's contextual inquiry into a per se rule. That approach finds no support in Fourth Circuit law.

Whether Appellee's interview process was consistent, subjective scoring minimized experience-based qualifications, or the process favored a substantially younger candidate are disputed factual issues. At summary judgment, those disputes must be resolved in Sullivan's favor, not weighed or discounted by the court. Reeves, 530 U.S. at 150. Properly applied, Barnes supports reversal, not affirmance.

> b. The District Court misused Hawkins v. PepsiCo by treating "Business Judgment" with deference rather than a limitation on judicial substitution of judgment.

The district court relied heavily on Hawkins v. PepsiCo, Inc., 203 F.3d 274 (4th Cir. 2000), but misapplied its holding by transforming the "business judgment" principle into a rule of deference that shields subjective hiring decisions from jury scrutiny.

Hawkins does not authorize courts to resolve disputed facts or to credit an employer's explanation where the record permits a reasonable jury to disbelieve it. The Court in Hawkins expressly conditioned deference on the premise that the employer's explanation "truly was the reason" for the challenged action. Id. at 279 (emphasis added). That premise is contested here.

Sullivan presented evidence calling into question the integrity of the hiring process itself, including deviations from established procedures, inconsistent application of evaluation criteria, and selective reliance on subjective measures. Further the District Court's stating at Doc.89 at 5 that Sullivan was not aware of any deviation from the normal hiring process is missing key information for context. That being, Sullivan's deposition took on April 16, 2024, and he and his counsel only received the requested documents (that show many of the factual problems with this case) the week prior. Finally and ironically enough, Hawkins presupposes an undisputed record establishing that the employer's explanation "truly was the reason" for the challenged action. Id. at 279. That presupposition is absent here.

### c. The District Court applied Hux v. City of Newport News improperly to resolve genuine disputes of material fact.

The district court also relied on Hux v. City of Newport News, 451 F.3d 311 (4th Cir. 2006), to discount Sullivan's evidence as consisting of "minor discrepancies."

Hux, however, does not permit courts to weigh evidence or to disaggregate cumulative proof into isolated components at summary judgment. Unlike the plaintiff in Hux, Sullivan did not merely quarrel with business judgment. He presented evidence of a nearly twenty-year age disparity, a promotion process dominated by subjective criteria, irregularities in interview scoring and documentation, and substantially greater experience within Appellee's organization. Doc. 88-5@p.22-23 ¶¶ 58–61; Pl.'s Br. at 29–31.

Viewed cumulatively, this evidence could allow a reasonable jury to conclude that Appellee's stated explanation was not the true reason for its decision. Hux does not authorize courts to foreclose such inferences.

> ### d. The District Court misread and misapplied Elam v. Early and the summary judgment standard.

The district court further relied on Elam v. Early, 138 F.4th 804, 816 (4th Cir. 2025), to disregard portions of Sullivan's evidence as "conclusory" or "speculative." That reliance misreads Elam.

Elam reaffirmed the settled Rule 56 principle that affidavits must be grounded in personal knowledge and admissible facts—not unsupported conclusions. It did not authorize courts to discard fact-based circumstantial evidence merely because it supports an inference of discrimination.

Sullivan's evidence consisted of specific, concrete facts concerning the structure and execution of the hiring process, comparative qualifications, and deviations from Appellee's Hiring for Excellence framework. See Doc. 88-5 ¶¶ 58–61; Doc. 87 at 25—27. A reasonable jury could credit that evidence and draw an inference of discriminatory intent. Elam does not permit courts to short-circuit that inquiry.

e. Record-Review Error. Finally, the district court's invocation of United States v. Dunkel, 927 F.2d 955 (7th Cir. 1991), to justify not reviewing "hundreds of pages of exhibits" compounds these errors. Dunkel does not apply to summary judgment and does not authorize a court to disregard cited record evidence. The Fourth Circuit has repeatedly held that a district court may not ignore record evidence favorable to the nonmovant simply because it is extensive or not organized in the manner the court would prefer. Fourth Circuit precedent requires district courts to consider the record as a whole and forbids ignoring evidence favorable to the nonmovant. See Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 569—70 (4th Cir. 2015); Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 216-17 (4th Cir. 2016). Rule 56(c)(3) further confirms that once materials are cited, the court must consider them; the rule permits courts to decline review only of materials that are neither cited nor relied upon. Finally, in relation to footnote I in the District Court's decision, Doc. 89@6, Sullivan did not wish for the District

Court to wade "through the hundreds of pages of exhibits to his declaration" and have Chief Judge Eagles or her Clerk be a pig, hunting for truffles. Pro Se Appellant Sullivan was simply trying to provide documented evidence that he believed presented questions of fact for the Court.

The district court misapplied settled Fourth Circuit precedent in granting summary judgment for Appellee. Courts may not sit as "super-personnel departments," nor not transform contextual, fact-intensive precedent into categorical rules that permit weighing evidence, resolving credibility disputes, or discounting circumstantial proof of pretext at summary judgment. That is precisely what occurred here through the district court's misapplication of Barnes, Hawkins, Hux, and Elam.

2. The district court abused its discretion by denying Appellant leave to amend his complaint to add a retaliation claim where the amendment was based on facts developed during discovery and would not have prejudiced Appellee. Although the district court's grant of summary judgment alone requires reversal, the court also erred by denying Sullivan leave to amend his complaint to add a retaliation claim. While this issue is secondary to the merits of the summary judgment ruling, it independently supports remand. Federal Rule of Civil

Procedure 15(a)(2) provides that courts "should freely give leave [to amend] when justice so requires." The Supreme Court and this Court have repeatedly emphasized that leave to amend should be denied only in limited circumstances, such as undue delay, bad faith, futility, or undue prejudice to the opposing party. *Foman*v. Davis, 371 U.s. 178, 182 (1962); Laber v. Harvey, 438 F.3d 404, 426-27 (4th Cir. 2006) (en banc).

## A. The proposed amendment was based on facts developed during discovery.

Sullivan sought leave to amend after discovery revealed facts supporting a retaliation claim, including adverse actions taken after he engaged in protected activity. His request was not based on information available at the outset of the litigation, but on evidence that emerged as the case developed.

This Court has recognized that amendments based on newly discovered facts weigh strongly in favor of granting leave. Matrix Capital Mgmt. Fund, LP v. BearingP0int, Inc., 576 F.3d 172, 193 (4th Cir. 2009). The district court's conclusion that the motion reflected undue delay failed to account for the timing and source of the information giving rise to the proposed claim.

## B. Appellee Would Not Have Been Unduly Prejudiced by the Amendment

Prejudice to the opposing party is the "touchstone" of the Rule 15(a) inquiry.

Laber, 438 F.3d at 427. Here, the district court did not identify any concrete

prejudice Appellee would have suffered had amendment been permitted. The

proposed retaliation claim arose from the same employment relationship, involved

overlapping witnesses, and relied on evidence already within Appellee's

possession.

Absent a showing of meaningful prejudice, denial of leave to amend constitutes

an abuse of discretion. Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir.

1986).

## C. The District Court Applied an Unduly Restrictive Standard

In denying leave to amend, the district court placed dispositive weight on the

scheduling order and the stage of the litigation, without fully engaging Rule 15 's

liberal amendment standard. While district courts retain discretion to enforce

scheduling orders, that discretion must be exercised consistently with the strong

federal policy favoring resolution of claims on their merits. Nourison Rug Corp. v.

Parvizian, 535 F.3d 295, 298 (4th Cir. 2008).

Where, as here, amendment would not have caused undue prejudice and was not

sought in bad faith, denial of leave to amend was unwarranted. At minimum, this

issue provides an additional basis for remand should this Court reverse the grant of

summary judgment.

3. The district court erred by granting summary judgment on Appellant's ADEA failure-to-promote claim where the record contains genuine issues of material fact as to pretext.

The district court erred by granting summary judgment despite a record containing

substantial evidence from which a reasonable jury could find Appellee's stated

reasons for Appellant's non-selection to be pretextual.

Under Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147—48 (2000),

and Dennis v. Columbia Colleton Med. ctr., 290 F.3d 639, 646-47 (4th Cir. 2002),

such shifting explanations alone permit a jury to disbelieve the employer's rationale

and infer discrimination. This Court has repeatedly held that an employer's

presentation of different justifications at different times is "in and of itself, probative

of pretext." EEOC v. Sears Roebuck & Co., 243 F.3d 846, 852—53

(4th Cir. 2001).

A. <u>Changing Stories Over Time/Different Justifications — Evidence of Pretext</u>

Two examples of these changing circumstances and stories evolving over time are

part of the current record. First, when Sullivan was demoted in 2019, no one

would explain why. Then, in the summer of 2020, appellees CEO challenged

27

employees to notify the organization and it's Diversity Equity and Inclusion office (DEI ) of situations where those principles were not being practiced. Appellant then contacted the Executive Director for DEI, Aleyah Pankey to discuss his concerns and frustrations regarding his job being eliminated and feeling discriminated against. The DEI Executive Director referred Appellant to a human resources executive, Candy Glass. From the meeting with Glass, and Vice President of Supply Chain, Clinton Hazziez, Appellant learned his job was eliminated to streamline and flatten the organization. When comparing the organization as it stood when the restructuring began in 2019 began, and Hazziez finished developing his organization in April, 20217 The organization was even larger than in 2019. Doc 88-3. Exhibits 6 & 23.

Second, during the initial hiring process for the Director replacement position, Appellee asserted that the System Director of Strategic Sourcing position was not filled due to Rotar's workload and competing priorities. Doc. 88-2 p.83:9—14. Rotar's explanation included differing priorities workload constraints, as well as later that a "decision was made" to defer hiring until a new Vice President was hired, and still later that Appellant lacked required qualifications. These explanations are inconsistent with one another and with contemporaneous documentary evidence showing that interviews were ongoing, candidates were being evaluated, and Rotar

and Bryant were actively scheduling interviews, assessing candidates, and reporting to leadership that the position was in the interviewing phase. Yet, at this time also Rotar had told Appellant he too would be a candidate to be interviewed. Doc. 88-5 @ p. 5¶¶ **16–2**

As set forth in Appellant's Statement of Facts, Appellee provided multiple, inconsistent explanations for why the August 2019 posting was not filled. A reasonable jury could conclude that these shifting rationales undermine the credibility of the employer's asserted justification and support an inference of discrimination. A reasonable jury could conclude these explanations are not merely incomplete, not a true reason and are inconsistent and post hoc, supporting an inference of pretext._Reeves at 143. Wannamaker-Amos at 726-727.

B. Decisionmaker Evidence Strengthens the Showing of Pretext
Discriminatory remarks or conduct by individuals involved in, or influencing, the adverse employment decision constitute circumstantial evidence of pretext, even if not contemporaneous with the decision itself. Wannamaker-Amos, 153 F.4th at 390—91; Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 300 (4th Cir. 2010).

In August of 2020, Hazziez announced an interim organization. Leaders in that interim organization included: Teresa Root as Interim Director of Sourcing, J. VD

as Interim Director of Contracting and Kathy Hartnett as Interim Director of Purchasing. Thus Root, Hartnett and J.VD were now peers. Yet, Sullivan was never consulted to see of his interest nor considered for the interim positions, showing questions of pretext. Caldrone v. Circle K Stores, Inc., No. 24-1432 (9th Cir. Oct. 3, 2025) (decision reversing summary judgment in an ADEA/FEHA failure-topromote case). Both Root and Hartnett were member of the interview panel where

J. VD was selected for the Sourcing Director position over Appellant. Root and J. VD both reported directly to Rotar. This Court has cautioned against discounting such evidence at summary judgment, particularly where the decisionmaker or decisionmakers (Rotar and Hazziez) had influence over the challenged action. Wannamaker-Amos, 153 F.4th at 391. Viewed in the light most favorable to the plaintiff, the record contains evidence from which a jury could infer that discriminatory animus played a role in the employer's decision.

C. The District Court Improperly Discounted Evidence of Process Irregularities

Sullivan identified irregularities in the hiring process that, viewed collectively, could support an inference that the interview process was structured or applied in a manner disadvantaging him as an older candidate. The district court rejected this evidence, concluding that deviations from internal procedures do not, standing

alone, establish pretext. Doc. 90 at 4—5 .While that principle is correct in the abstract, this Court has emphasized that process procedural irregularities remain probative of pretext when considered in context, particularly when combined with age disparity and subjective decision-making. Wannamaker-Amos v. Purem Novi, Inc., 153 F.4th 369, 392—94 (4th Cir. 2025). When reviewing Doc. 88 Attachment/Exhibit 9 @ 63., one thing stands out. The average of the ages of the panel was nine (9) younger than Sullivan. While some courts do not see nine years as significant, the relative age disparity does not undermine Sullivan's showing of pretext. Although some courts have treated age gaps of less than ten years as presumptively insubstantial when viewed in isolation, that presumption dissolves where the surrounding evidence demonstrates that age meaningfully influenced the employer's decision making. See Cianci v. Pettibone Corp., 152 F.3d 723, 727—28 (7th Cir. 1998) (explaining that a ten-year gap may be presumptively substantial, but smaller gaps remain probative where the record shows age was important to the hiring employer). Similarly, in Girten v. McRentals, Inc., the Eighth Circuit emphasized that a nine-year age difference is not dispositive either way and must be evaluated in light of the totality of the evidence. 337 F.3d 979, 983 (8th Cir. 2003).

Here, the age disparity is not an isolated data point but part of a broader and revealing pattern. Plaintiff's immediate supervisor, Jeff Yardley, lost his position to an individual twenty-eight years younger. Doc. 88, Attachment/Exhibit 4. Plaintiff himself was replaced by an individual sixteen years younger. This repeated displacement of older employees by substantially younger individuals within the same supervisory chain provides powerful circumstantial evidence that age was not incidental, but operative. Under Cianci and Girten, such pattern evidence removes any inference that the age differentials were coincidental and instead permits a reasonable jury to conclude that Defendant's stated reasons were pretextual and that age animus influenced the challenged employment decisions.

The district court erred by parsing each irregularity in isolation and failing to consider the totality of the evidence, as required by Reeves.

D. Inconsistent Application of Subjective Criteria and Scoring Irregularities

Support Pretext

Fourth Circuit precedent makes clear that when an employer relies on subjective criteria in a structured interview setting, evidence calling into question the integrity and consistency of that process is "susceptible to abuse and more likely to mask

pretext." Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 298 (4th Cir. 2010); Dennis, 290 F.3d at 647. And to remind the Court, Appellee's HR Manager warned the then Vice President of Supply Chain that "[t]he risk you run is the selection process. " Doc. 88 Attachment/Exhibit 6, no page number but DEF 4947.

Appellee asserted that Appellant was not selected because another candidate was "significantly higher ranked." Yet the scoring grids produced by Appellee show that multiple panelists scored Appellant and the selected candidate identically across key categories, including technical and professional skills, decision making, building partnerships, planning and organizing, and motivational fit.

The score totals given by Rotar were summarized as follows:

| Director of Contracting & Sourcing Candidate Scoring Grid | | | | |
|---|---|---|---|---|
| | Jack Sullivan | Josh VanD Ck | Shaun Kirwan | Duane Hess |
| Ana Elis Perry | 16 | | 19 | N/A |
| Omar Wells | 16 | 16 | 18 | N/A |
| Paul Bednar | 15.5 | 16.5 | N/A | N/A |

| Teresa Root | 15 | | 20 | N/A |
|---|---|---|---|---|
| Aaron Hill | | 18 | 18 | N/A |
| Ryan Rotar | 16 | 20 | 18 | N/A |
| Kathy Harnett | 15 | 24 | 23 | N/A |
| Total Score | 110.5 | 130.5 | 116 | N/A |

Doc. 88-3, 1150-59 In order to favor VanDyck over Kirwan, Rotar had to ignore the fact that Kirwan did not get interviewed by Bednar, giving him a score of 116 compared to VanDyck's total of 130.5. However, if the HFE process of consensus scoring had been followed and the scores for each person averaged to take into account the missing Bednar score for Kirwan, the scores would have looked like this:

| Category | Sullivan | VanDyck | Kirwan |
|---|---|---|---|
| Technical & Professional Skills | 3.07 | 3.64 | 4.16 |
| Decision Making | 3.0 | 3.14 | 3.66 |
| Building Partnerships | 3.3 | 4 | 4.16 |
| Planning & Organizing | 3.0 | 3.14 | 3.66 |
| Motivational Fit | 3.42 | 4 | 3.33 |

| | | | |
|---|---|---|---|
| TOTAL | 15.79 | 17.92 | 18.97 |

Taking into the fact that Kirwan was not interviewed by Bednar, however, would not have given Rotar the result he wanted, which was to show that VanDyck was the highest-ranking applicant. In actuality, had the scores been averaged instead of merely summed, Kirwan, an external applicant, would have been the highestranking applicant. The inference can be drawn in Sullivan's favor that Rotar's rationale that VanDyck was the highest ranking applicant was designed to advantage VanDyck over Sullivan because State employee preference [1] would have made it difficult to hire Kirwan over either VanDyck or Sullivan.

In any event, Defendant's witnesses conceded a heavy reliance on the interview scores as opposed to other job-related criteria. 88-2 @ pp.215:3217:3;286:13287:7 This was also mirrored in Defendant's EEOC position statement which stated the following:

[Sullivan] was interviewed by a committee comprised of his peers and leadership in the Supply Chain Department. The interview committee used the same behavioral based interview questions to evaluate all three candidates. The questions were aimed at assessing the core competencies needed to be successful in the role, including technical and professional skills, decision making, building partnerships, planning and organizing, and motivational fit.

Doc. 88-3 **@¶62,Exh12** The questions asked which Defendant asserts were intended to assess the "core competencies" were never produced by Defendant.

The record further shows that one panelist did not interview the external candidate,

another panelist conducted a solo interview of the selected candidate, and that scores

were summed in a manner that favored the younger internal candidate,

_____

N.C. Gen. Stat. 126-7.1

despite the absence of any documented requirement that scores be totaled rather

than averaged. Doc. 88-5 p. 18-22 50—59; Exhs. 7—8. These irregularities

directly disadvantaged Appellant and undermine Appellee's reliance on the

interview process as a neutral justification.

E. Evidence of Bias by Decisionmakers strengthens showing of pretext.

Discriminatory actions made by people involved in or influencing the adverse

employment decision may constitute circumstantial evidence of pretext, even if not

contemporaneous with the challenged decision." Wannamaker-Amos v. Purem

Novi

Inc., No. 23-1568, slip op. at 16—18 (4th Cir. Jan. 13, 2025). Merritt at 300.

In August 2020, Hazziez announced a new interim organization. He appointed

J.VD Interim Director Contracting, Teresa Root, Interim Director of Sourcing and

Kathy Hartnett, Interim Director of Purchasing. Both J. VD and Root reported to

Rotar. J. VD, Root and Hartnett were peers in that interim organization.

Furthermore, Root and Hartnett were participants in the interviewing panel for the Director of Sourcing position that is contested in this case.

As explained earlier, Appellant complained of age discrimination in August and October 2020, and those complaints were known to Hazziez, and he later participated directly and indirectly in the promotion decision. Doc. 88-5 @ p.-17 ¶¶ 32–48, 51. The record also reflects conflicting testimony regarding who the true decisionmakers were and the extent of Hazziez's behind-the-scenes involvement in the selection process. Doc. 88-2 @ pp.224-225. These questions of bias as well as credibility disputes cannot be resolved at summary judgment. Hollis v. Morgan state Univ., 149 F.4th 486, 489-91 (4th Cir. 2025); Reeves, 530 U.S. at 150-51.

## F. The District Court Discounted Evidence of Process Irregularities

This court has emphasized that procedural irregularities remain probative of pretext when considered in context, particularly when combined with age disparity and subjective decision making. In closing, [w]here genuine issues of material fact are in dispute, it is not our role at the summary judgment stage to decide which party's evidence is more persuasive. Wannamaker-Amos, 152 F. 4th at 399.

4. The district court improperly weighed evidence and drew inferences in favor of the Appellee contrary to the summary judgment standard and controlling Fourth Circuit precedent.

Rather than drawing all reasonable inferences in Appellant's favor, the district court credited Appellee's explanations and discounted competing inferences supported by the record. For example, the court accepted UNC Health's assertion that any process irregularities were immaterial, despite evidence showing that those irregularities directly and uniquely disadvantaged Appellant. Doc. 90 @ 5. This approach contravenes the summary judgment standard. Tolan v. Cotton, 572 U.S. 650, 657 (2014); Landholt v. Corley, 149 F.4th 486, 489-90 (4th Cir. 2025). Furthermore, although the ADEA requires proof that age was the but-for cause of the adverse action, that requirement does not heighten the plaintiff's burden at summary judgment. Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177-78 (2009). Once a plaintiff produces evidence sufficient to permit a jury to disbelieve the employer's explanation, the jury may infer that discrimination was the determinative cause. Reeves, 530 U.S. at 147—48; Westmoreland v. TWC Admin. LLC, 924 F.3d 718, 726-27 (4th Cir. 2019); Palmer v. Liberty Univ., 72 F.4th 52, 63-64 (4th Cir. 2023).

Here, the substantial age disparity, shifting explanations, scoring irregularities and credibility disputes taken directly from the record and set here in this brief, would permit a reasonable jury to conclude that, but for Appellant's age, he would not have been denied the promotion.

A. The District Court Erroneously Required Sullivan to Disprove Appellee's Explanation to Satisfy "But-For" Causation

Further, the district court repeatedly emphasized that "ADEA plaintiffs face a high causation burden" and concluded that Sullivan failed to show that age was the butfor cause of the promotion decision. Doc. 90 at 6. But this Court has made clear that but-for causation does not require proof that age was the sole factor, nor does it require plaintiffs to negate every alternative explanation at summary judgment. Westmoreland, 924 F.3d at 726—27. If a reasonable jury could find that the employer's stated reason is false or unworthy of credence, it may also infer that age discrimination was the determinative cause. Reeves, 530 U.S. at 147—48.

Importantly, requiring proof of but-for causation does not authorize courts to resolve credibility disputes, weigh competing explanations, or demand that plaintiffs disprove the employer's account at summary judgment. Although the ADEA requires proof of but-for causation at trial, that requirement does not heighten the plaintiff's burden at summary judgment. The Rule 56 inquiry remains whether a reasonable jury could find that age was the but-for cause of the challenged decision. By requiring Sullivan to negate Appellee's explanations and by resolving disputed factual issues itself, the district court imposed a burden higher than the law permits. As Justice Thomas recently cautioned, the judge-

made McDonnell Douglas framework, when applied at summary judgment,

"requires a plaintiff to prove too much at summary judgment" and has produced

"troubling outcomes on the ground." Ames v. Ohio Dep 't of Youth Servs., No. 23-

1039, 605

U.S. (June 5, 2025) (Thomas, J., concurring) (slip op. at 11—12) (joined by

Gorsuch, J.). Granted this is not directly related to the "but for" standard.

Instead the logic behind Ames does support by analogy the supposition that

requiring proof of but-for causation does not authorize courts to resolve credibility

disputes, weigh competing explanations, or demand that plaintiffs disprove the

employer's account at summary judgment.

Here, viewing the evidence in the light most favorable to Sullivan, including the

substantial age disparity, subjective scoring by a manager-dominated panel,

comparative experience, and alleged process irregularities, a reasonable jury could

conclude that but for his age, Sullivan would have been selected.

## CONCLUSION

The district court's judgment cannot be reconciled with Rule 56 or controlling

Fourth Circuit precedent. Rather than viewing the evidence in the light most

favorable to Appellant, the court credited the employer's explanations, discounted

40

evidence of procedural irregularities and shifting justifications, and resolved credibility disputes that must be decided by a jury.

When the record is properly viewed de novo, a reasonable jury could conclude that Appellee's stated reasons for denying Appellant the promotion were pretextual and that age was the but-for cause of the adverse decision. The district court further abused its discretion by denying leave to amend to add a retaliation claim based on facts developed during discovery and absent any showing of prejudice.

For these reasons, Appellant respectfully requests that this Court reverse the grant of summary judgment, vacate the denial of leave to amend, and remand this case for trial on the merits.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a) and Fourth Circuit Local Rule 34(a), Appellant respectfully requests oral argument.

This appeal presents substantial questions concerning the proper application of the summary judgment standard in ADEA cases, the role of procedural irregularities and shifting explanations in proving pretext, and the interaction between Rule 56 and the ADEA's but-for causation requirement. Oral argument would assist the

Court in clarifying these issues and in addressing the district court's

misapplication of controlling precedent.

As a pro se appellant, Mr. Sullivan respectfully submits that oral argument would

materially aid the decisional process.

This Brief is respectfully submitted.

_____

John D. Sullivan, Pro Se

Appellant

January 30, 2026

40