**CASE NO. 25-2322**

_____

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

_____

JOHN D. SULLIVAN, Plaintiff-Appellant,


v.


THE UNIVERSITY OF NORTH CAROLINA HEALTH CARE SYSTEM,
Defendant-Appellee.

_____

**ON APPEAL FROM**

**THE UNITED STATES DISTRICT COURT FOR THE MIDDLE
DISTRICT OF NORTH CAROLINA IN**

**CASE NO. 1:22-CV-847,**

**HONORABLE CATHERINE C. EAGLES, CHIEF DISTRICT JUDGE**

_____

**RESPONSE BRIEF OF DEFENDANT-APPELLEE**

SUBMITTED BY:

Jill S. Stricklin
PIERSON FERDINAND, LLP
550 N. Liberty Street, Suite 166
Winston-Salem, NC 27101
jill.stricklin@pierferd.com
336.800.5955

Frances De La Guardia,
PIERSON FERDINAND, LLP
555 NE 15th Street, Unit 21A
Miami, FL 33132
frances.delaguardia@pierferd.com
305.712.4385

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 25-2322    Caption: John Sullivan v. University of North Carolina Health Care System

Pursuant to FRAP 26.1 and Local Rule 26.1,

The University of North Carolina Health Care System ("UNC Health")
(name of party/amicus)

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐YES ☑NO

2. Does party/amicus have any parent corporations? ☐YES ☑NO
   If yes, identify all parent corporations, including all generations of parent corporations:
   NA

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐YES ☑NO
   If yes, identify all such owners:
   NA

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

    NA

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

    NA

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

    NA

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

    NA

Signature: /s/ Jill S. Stricklin                    Date:   December 23, 2025

Counsel for: Appellee UNC Health

Print to PDF for Filing

## TABLE OF CONTENTS

STATEMENT OF JURISDICTION ........................................................1

STATEMENT OF ISSUES .................................................................1

STATEMENT OF THE CASE .............................................................2

STATEMENT OF FACTS...................................................................2

    A.   The 2019 Supply Chain Reorganization ....................................3

    B.   The 2019 System Director of Strategic Sourcing Posting ............4

    C.   The 2020 Supply Chain Reorganization ....................................6

    D.   The 2020 Director of Sourcing and Contracting Posting............7

    E.   The April 2021 Promotion ........................................................7

SUMMARY OF ARGUMENT..........................................................11

STANDARDS OF REVIEW .............................................................13

ARGUMENT ..................................................................................14

    I.   The District Court Correctly Granted Summary Judgment in UNC Health's Favor Based on Sullivan's Failure to Present Evidence of Pretext Regarding UNC Health's Legitimate, Nondiscriminatory Reason for Its Promotion Decision: the Determination of a Panel of Interviewers that Sullivan Was Not the Best-Qualified Candidate...............14

    II.   The District Court Correctly Applied the ADEA's "But-For" Causation Standard. ....................................................................23

    III.   The District Court Acted Within Its Discretion in Denying Leave to Amend the Complaint Where Sullivan Failed to Demonstrate Good Cause for Belatedly Requesting Amendment, After the Scheduling Order Deadline Had Passed, Based on Facts Known to Him When the Lawsuit Commenced and "Confirmed" at a Deposition 14 Months Before Sullivan's Motion to Amend. .24

CONCLUSION ...............................................................................28

STATEMENT REGARDING ORAL ARGUMENT ............................28

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)..............................................13

*Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248 (4th Cir. 2005)......18

*Bandy v. City of Salem,* 59 F.4th 705(4th Cir. 2023) ..............................................18

*Barnes v. Charles Cnty. Pub. Schs.*, 747 F. App'x 115 (4th Cir. 2018).................22

*CBX Techs., Inc. v. GCC Techs, LLC*, 533 Fed. App'x 182 (4th Cir. 2013)...........25

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).........................................................13

*Cole v. Family Dollar Stores of Md., Inc.*, 811 Fed. App'x 168 (4th Cir. 2020) ....24

*Cook v. Howard*, 484 Fed. App'x 805 (4th Cir. 2012)......................................25, 27

*Elam v. Early*, 138 F.4th 804 (4th Cir. 2025).........................................................23

*Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954 (4th Cir. 1996)................14

*Girten v. McRentals, Inc.*, 337 F.3d 979 (8th Cir. 2003).........................................17

*Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)...............................................24

*Gurganus v. Beneficial N.C., Inc.,* 25 F. App'x 110 (4th Cir. 2001) .....................14

*Halperin v. Abacus Tech. Corp.,* 128 F.3d 191 (4th Cir. 1997).............................16

*Ham v. Wash. Suburban Sanitary Comm'n*, 158 F. App'x 457 (4th Cir. 2005) .....22

*Hawkins v. PepsiCo, Inc.*, 203 F.3d 274 (4th Cir. 2000)..................................16, 21

*Holland v. Wash. Homes, Inc.*, 487 F.3d 208 (4th Cir. 2007) ................................19

*Hood-Wilson v. Bd. of Trs. of the Cmty. College of Baltimore Cnty.*, 162 F.4th 101 (4th Cir. 2025)..................................................................................................22

*Hux v. City of Newport News*, 451 F.3d 311 (4th Cir. 2006) ......................18, 21, 22

*Laber v. Harvey*, 438 F.3d 404 (4th Cir. 2006)........................................................16

*Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.,* 986 F.3d 711 (7th Cir. 2021) .............................................................................................15, 19, 24

*Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172 (4th Cir. 2009) ..................................................................................................27

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)..............13

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)......................................15

*McKay v. U.S. Dep't of Transp.,* 340 F.3d 695 (8th Cir. 2003)...............................19

*Nourison Rug Corp. v. Parvizian*, 535 F.3d 295 (4th Cir. 2008) ......................13, 25

*Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133 (2000) ...........................15, 16

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993) .............................................15

*Texas Dep't of Comm. Affairs v. Burdine,* 450 U.S. 248 (1981).............................15

*Turner v. Town of Narrows*, No. 25-1298, 2026 U.S. App. LEXIS 2135 (4th Cir. Jan. 28, 2026) .......................................................................................18

*United States v. Medcom Carolinas, Inc.*, 42 F.4th 185 (4th Cir. 2022)................14

*United States v. Welsh*, 870 F.3d 530 (4th Cir. 2018).............................................14

*Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244 (4th Cir. 2025) ...............16

iii

*Westmoreland v. TWC Admin. LLC,* 924 F.3d 718 (4th Cir. 2019) ........................15

*Williams v. Cerberonics, Inc.,* 871 F.2d 452 (4th Cir.1989) ...................................16

*Young v. Barnhart,* 52 F. App'x 191 (4th Cir. 2002)...............................................17

*Young v. Lehman,* 748 F.2d 194 (4th Cir. 1985)......................................................17

**OTHER AUTHORITIES**

29 U.S.C. § 623 ........................................................................................................14

**FEDERAL RULES**

Fed. R. Civ. P. 15 ...............................................................................................25, 27

Fed. R. Civ. P. 16 .........................................................................................25, 26, 27

Fed. R. Civ. P. 56 .........................................................................................13, 23

## STATEMENT OF JURISDICTION

Appellant John D. Sullivan appeals from the Final Judgment entered by the United States District Court for the Middle District of North Carolina on September 29, 2025, granting summary judgment in favor of Appellee, The University of North Carolina Health Care System ("UNC Health"), and dismissing Sullivan's claims under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq*. ("ADEA") with prejudice.  The district court had subject-matter jurisdiction under 28 U.S.C. § 1331. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1. Whether the district court correctly granted summary judgment where Sullivan failed to raise an issue of pretext as to UNC Health's legitimate, nondiscriminatory reason for its promotion decision: the determination of a panel of interviewers, following established selection protocol, that Sullivan was not the best-qualified candidate.

2. Whether the district court properly applied the ADEA's "but-for" causation standard in granting summary judgment in UNC Health's favor.

3. Whether the district court acted within its discretion in denying Sullivan's untimely motion to amend his complaint to add a retaliation claim where he failed to demonstrate good cause under Rule 16(b).

1

## STATEMENT OF THE CASE

In his original Complaint [ECF 1], Sullivan alleged that UNC Health first demoted him in 2019 and later failed to promote him in 2020 because of his age in violation of the ADEA. The district court dismissed Sullivan's demotion-based claim [ECF 20] for failure to exhaust his administrative remedies before the United States Equal Employment Opportunity Commission ("EEOC").

After discovery, UNC Health moved for summary judgment as to the remaining failure-to-promote claim. [ECF 55.] Sullivan later filed a motion for leave to amend his Complaint to add a new claim for retaliation under the ADEA. [ECF 86.] The district court granted summary judgment in favor of UNC Health, finding that Sullivan failed as a matter of law to demonstrate that UNC Health's legitimate, nondiscriminatory reason for its promotion decision were pretextual. [ECF 92.] In that same Memorandum Opinion and Order, the court denied Sullivan leave to amend his Complaint based on his failure to show good cause for his belated motion. [*Id*.] Final judgment was entered on September 29, 2025. [ECF 93.]

## STATEMENT OF FACTS

UNC Health is North Carolina's largest academic health care system, comprising hospitals and health care facilities throughout the State. (Declaration of Ryan Rotar ("Rotar Decl.") at ¶3 [ECF 56-2 at p. 1]). Sullivan began working in

UNC Health's Supply Chain department in January 2017 as Health Care System Manager/Director, Sourcing and Contracting. (Deposition of John Sullivan ("Sullivan Dep.") at pp. 37, 41 [ECF 56-1 at pp. 17, 20]). The Supply Chain department is responsible for purchasing clinical and non-clinical goods, services, and equipment to support UNC Health. (Rotar Decl. at ¶4 [ECF 56-2 at p. 1]). This includes clinical goods and services that enable clinicians to provide patient care. (Sullivan Dep. at p. 46 [ECF 56-1 at p. 25]).

Sullivan was responsible for developing the sourcing and contracting function for the Supply Chain department, with duties that included creating terms and conditions for purchase orders as well as updating the master purchase agreements used by UNC Health. (Sullivan Dep. at pp. 43-44 [ECF 56-1 at pp. 22-24]). Before being employed at UNC Health, Sullivan had no previous experience in the clinical component of sourcing and contracting; he had never worked in the health care industry, and his experience related exclusively to manufacturing environments. (Sullivan Dep. pp. 22-36, 40-41 [ECF 56-1 at pp. 2-16, 19-20]).

A.    **The 2019 Supply Chain Reorganization**

In November 2018, UNC Health retained outside consultants to assess the Supply Chain organization and recommend potential changes. (Sullivan Dep. at pp. 88-89 [ECF 56-1 at pp. 34-35]). In December 2018, William Bryant, then interim Vice President of Supply Chain, shared a proposed new organizational chart based

3

on the consultants' recommendations. (Sullivan Dep. at pp. 95-97 [ECF 56-1 at pp. 36-37]).

The 2019 restructuring sought to flatten the Supply Chain organization by eliminating the existing director and executive director roles. (Sullivan Dep. at pp. 99-100 [ECF 56-1 at pp. 39-40]; Rotar Decl. at ¶10 [ECF 56-2 at p. 3]). Supply Chain leaders who were displaced from their previous roles could apply for new roles when they became available. (Sullivan Dep. at pp. 99-100 [ECF 56-1 at pp. 39-40]; Rotar Decl. at ¶13 [ECF 56-2 at p. 3]). Those who remained in impacted roles as of June 2019, including Sullivan, were reassigned to manager-level positions. (Sullivan Dep. at pp. 105-08, 112-13 [ECF 56-1 at pp. 42-46, 47-48], Ex. 10 [ECF 56-1 at p. 72]; Rotar Decl. at ¶10 [ECF 56-2 at p. 3]).

## B.    The 2019 System Director of Strategic Sourcing Posting

The 2019 restructuring contemplated the creation of two new Executive Director roles: (1) Executive Director of Supply Chain Operations, and (2) Executive Director of Hospital and Affiliate Operations. (Rotar Decl. at ¶11 [ECF 56-2 at p. 3]). The Executive Director of Supply Chain Operations would oversee two employees: (1) System Director of Distribution and Logistics and (2) System Director of Strategic Sourcing. (*Id.*).

Before the 2019 reorganization, Sullivan oversaw the contracting function, whereas Ryan Rotar, then System Director of Value Analysis and Project

4

Management, oversaw the value analysis function and personnel. (Sullivan Dep. at pp.76-79 [ECF 56-1 at pp. 29-32]; Rotar Decl. at ¶5 [ECF 56-2 at p. 2]). Value analysis involves working with clinical stakeholders throughout the UNC Health system to determine the clinical products, services, and equipment that they need. (Sullivan Dep. at pp. 77-78 [ECF 56-1 at pp. 30-31]; Rotar Decl. at ¶5 [ECF 56-2 at p. 2]). Under the restructuring, value analysis and contracting would report to the same Director for the first time. (Sullivan Dep. at pp. 100-01 [ECF 56-1 at pp. 40-41]). The newly created System Director of Strategic Sourcing position would oversee both functions and supervise the teams responsible for each. (*Id*. at pp. 100-101, 121-122 [ECF 56-1 at pp. 40-41, 52-53]; Rotar Decl. at ¶12 [ECF 56-2 at p. 3]).

On April 25, 2019, Rotar became the Executive Director of Supply Chain Operations. (Sullivan Dep. at pp.108-109 [ECF 56-1 at pp. 45-46]; Rotar Decl. at ¶14 [ECF 56-2 at p. 4]). After assuming this new role, Rotar created a job requisition, with assistance from UNC Health's recruiting personnel, and posted a new System Director of Strategic Sourcing position on August 19, 2019. (Sullivan Dep. at p. 120 [ECF 56-1 at p. 51]; Rotar Decl. at ¶15 [ECF 56-2 at p. 4]). Sullivan applied for the new role, along with several other applicants, but due primarily to the competing demands and priorities of Rotar's new Executive

Director position, he never proceeded far enough with the recruitment process to begin interviewing candidates. (Rotar Decl. at ¶15 [ECF 56-2 at p. 4]).

### C.     The 2020 Supply Chain Reorganization

In February 2020, UNC Health hired a new Vice President of Supply Chain, Clinton Hazziez, who began implementing his own vision and strategic plans for the Supply Chain organization. (Rotar Decl. ¶16 [ECF 56-2 at p. 4]). As the incoming Vice President, Hazziez informed Rotar that he wanted to have input into hiring for the Director of Strategic Sourcing role. (Rotar Decl. at ¶17 [ECF 56-2 at p. 4]). Additionally, some hiring decisions were placed on hold due to the COVID-19 pandemic. (*Id.*) For these reasons, the job requisition for System Director of Strategic Sourcing was cancelled on March 17, 2020. (Sullivan Dep. at pp. 125-26 [ECF 56-1 at pp. 54-55]; Rotar Decl. at ¶17 [ECF 56-2 at p. 4]).

Due to the change in leadership, the proposed 2019 Supply Chain organization structure never fully took effect. (Rotar Decl. at ¶17 [ECF 56-2 at p. 4]). Hazziez implemented an interim organizational structure, focusing on what he deemed key leadership roles and responsibilities. (*Id.* at ¶19 [ECF 56-2 at p. 5]). Rotar recommended Sourcing and Contracting Managers Teresa Root and Josh Van Dyck for interim Director of Sourcing and Contracting roles. (*Id.*). Both Root and Van Dyck had assisted in critical leadership tasks during the second quarter of 2020, when COVID-19 created tremendous challenges for the system's supply

6

chain. (*Id*. at ¶18 [ECF 56-2 at p. 4]). Hazziez approved the recommendation, and Root and Van Dyck began working in their interim assignments around August 2020. (Sullivan Dep. at pp. 134-135 [ECF 56-1 at pp. 57-58], Ex. 13 [ECF 56-1 at p. 73]; Rotar Decl. at ¶19 [ECF 56-2 at p. 5]).

### D.     The 2020 Director of Sourcing and Contracting Posting

During this time, Hazziez worked with UNC Health's recruitment personnel to prepare a job requisition for a new position—Director of Sourcing and Contracting—which was posted on December 10, 2020. (Sullivan Dep. at pp. 158, 160 [ECF 56-1 at pp. 59-60]; Rotar Decl. at ¶20 [ECF 56-2 at p. 5], Exs. C, D [ECF 56-2 at pp. 13-20]). Sullivan applied for the role. (Sullivan Dep. at pp. 158, 162-63 [ECF 56-1 at pp. 59, 61-62]). Like the Director of Strategic Sourcing position posted in August 2019, the Director of Sourcing and Contracting position would oversee value analysis and contracting. (Rotar Decl. at ¶21 [ECF 56-2 at p. 6]). It was not the same Director of Sourcing and Contracting position that Sullivan previously held. (*Id*.)

### E.     The April 2021 Promotion

To select the candidate for this role, UNC Health employed the established Hiring for Excellence process that it uses for hiring and promotion decisions. (Sullivan Dep. at p. 53 [ECF 56-1 at p. 26]; Rotar Decl. at ¶22 [ECF 56-2 at p. 6]). Rotar served as hiring manager. (Sullivan Dep. at p. 160 [ECF 56-1 at p. 60]; Rotar

Decl. at ¶22 [ECF 56-2 at p. 6]). After an initial screening process, UNC Health

interviewed three final candidates for the position: Sullivan, Van Dyck, and an

external applicant, Shawn Kirwan. (Rotar Decl. ¶23 [ECF 56-2 at p. 6]).

Interviews were conducted by Rotar and a committee of Supply Chain

leaders: Paul Bednar, Kathy Hartnett, Aaron Hill, Ana-Elis Perry, Teresa Root, and

Omar Wells. (Sullivan Dep. at pp. 163-64 [ECF 56-1 at pp. 62-63]; Rotar Decl. at

¶24 [ECF 56-2 at p. 6]). The interview panel used behavioral-based interview

questions generated through the Hiring for Excellence process to evaluate all three

final candidates. (Sullivan Dep. at pp. 172-73 [ECF 56-1 at pp. 64-65]; Rotar Decl.

at ¶25 [ECF 56-2 at p. 6]). The finalists were assessed on core job-related

competencies needed to succeed in the Director of Sourcing and Contracting role:

technical and professional skills, decision making, building partnerships, planning

and organizing, and motivational fit. (Rotar Decl. at ¶25 [ECF 56-2 at p. 6]). The

interviewers completed rating grids for each of the candidates interviewed,

assigning numerical scores (1 through 5, with 5 being the highest rating, per the

Hiring for Excellence materials) for each of the core competencies listed above.

(*Id*. at ¶26 [ECF 56-2 at p. 7]).

Van Dyck and Kirwan both scored significantly higher across the board than

Sullivan. (*Id*. at ¶27 [ECF 56-2 at p. 7], Ex. F [ECF 56-2 at p. 28]). Van Dyck

received a total of 130.5 points, Kirwan received 116 points, and Sullivan received

110.5 points. (*Id*.) One of the committee members was unable to interview Kirwan, so Kirwan's total reflected one fewer score for each core competency than the other two finalists. (*Id*. at ¶32 [ECF 56-2 at p. 9]). Accounting for this differential, Rotar determined that the interviewers rated the top two candidates, Van Dyck and Kirwan, fairly evenly. (*Id*.) Otherwise, Van Dyck would have been, far and away, the top-scoring candidate. (*Id*.)

Based on his interview performance, panelists provided negative feedback about Sullivan's technical and professional knowledge and skills. (*Id*. at ¶29 [ECF 56-2 at p. 7].) One interviewer noted, for example, that Sullivan had provided a "good first example" but "actions and results had to be coaxed out," and the second example indicated he "struggles with technology" and "may not utilize appropriate resources to obtain needed data for analysis." (*Id*. at ¶29 [ECF 56-2 at pp. 7-8], Ex. G [ECF 56-2 at p. 29]). Another noted that Sullivan was asked two questions for this competency, and for the first one, "I thought he was a bit all over the place with his answer," and, for the second one, "he was very vague and acknowledged his weakness of data." (*Id*. at ¶29 [ECF 56-2 at p. 8], Ex. G [ECF 56-2 at p. 31]). That commentator further stated, "having been here for so long, I didn't think his response was strong." (*Id*.) A third panelist wrote, "I didn't really follow the Dell example for a challenging assignment … my initial score here would have been a 2. The follow-up question … Ana asked at the end, he did a better job of

9

explaining and providing examples." (*Id.* at ¶29 [ECF 56-2 at p. 8], Ex. G [ECF 56-2 at p. 30]).

Interviewer notes also contained negative comments about Sullivan's interview performance on the core competency related to planning and organizing. (*Id.* at ¶30 [ECF 56-2 at p. 8]).  One panelist wrote, "Answer indicated his strengths are not in planning and organizing as he missed two deadlines and may not have communicated effectively to get information needed." (*Id.* at ¶30 [ECF 56-2 at p. 8], Ex. G [ECF 56-2 at p. 29]). Another commented, "[Sullivan's] transparency is good here on the missed deadlines, but aside from acknowledging that he could have been more specific with the data request, I'm not clear on what he started doing different?" (*Id.* at ¶30 [ECF 56-2 at p. 8], Ex. G [ECF 56-2 at p. 30]). A third interviewer wrote, "I recall the project that he referred to. From that story and the work I have to do with him, it's continually a push to get things done in a timely manner." (*Id.* at ¶30 [ECF 56-2 at p. 8], Ex. G [ECF 56-2 at p. 31]).

In contrast, the interviewers shared no such concerns about Van Dyck and commented positively on Van Dyck's interview performance as to the core job-related competencies. (*Id.* at ¶31 [ECF 56-2 at p. 8], Ex. H [ECF 56-2 at pp. 32-35]).

Based on the interview scores, as well as other job-related factors, Rotar recommended Van Dyck for the position over Kirwan. (*Id.* at ¶¶33, 35 [ECF 56-2

10

at pp. 9-10], Ex. I [ECF 56-2 at pp. 36-37]). These "tie-breaking" factors between these top-rated candidates included questions about Kirwan's lack of demonstrated history leading teams, as well as Rotar's commendation of the work Van Dyck had done to improve team morale and upgrade capabilities in the contracting function in the short time Van Dyck had held the interim role. (*Id.*) Hazziez agreed with the recommendation, and Van Dyck was offered and accepted the promotion to Director of Sourcing and Contracting. (*Id.* at ¶35 [ECF 56-2 at p. 10], Ex I [ECF 56-2 at p. 35]). At the time of selection, Sullivan was 60 years of age, and Van Dyck was 44. [ECF 1 at ¶27; ECF 21 at ¶27]). Sullivan admitted that none of his supervisors or members of the interview committee ever made any derogatory remarks about his age. (Sullivan Dep. at pp. 201-05 [ECF 56-1 at pp. 66-70]).

## SUMMARY OF ARGUMENT

The district court's grant of summary judgment should be affirmed. Sullivan's opening brief rests on a fundamental misunderstanding of the summary judgment standard. Far from misapplying Fourth Circuit law, the district court faithfully applied established precedent in concluding that Sullivan failed to present sufficient evidence on which a reasonable jury could conclude that UNC Health's legitimate, non-discriminatory reason for denying him a promotion was a pretext for intentional age discrimination. Viewing the evidence as a whole, the

11

court properly found that Sullivan could not meet the high burden of proving that

but for his age, he would have received the promotion.

Under well-established law, mere disagreement with an employer's business

judgment, minor procedural variations, and subjective dissatisfaction with an

interview process do not constitute evidence of pretext. The district court properly

concluded that the evidence Sullivan characterizes as "irregularities" and "shifting

explanations" in the promotion selection process did not create a genuine dispute

of material fact. Indeed, Sullivan's evidence amounts to nothing more than

speculation and conclusory assertions rather than concrete evidence that would

permit a reasonable jury to disbelieve UNC Health's legitimate reasons for

selecting Van Dyck for the Director of Sourcing and Contracting position.

The district court also correctly applied the ADEA's "but-for" causation

standard and found that Sullivan produced no evidence to meet his burden of

showing that age was the determinative factor in the promotion decision. The

undisputed evidence demonstrates that Van Dyck was selected because he

outperformed Sullivan in a structured interview process. In fact, Sullivan was the

lowest ranked of the three final candidates.

Lastly, the district court acted well within its discretion in denying

Sullivan's untimely motion to amend. Sullivan failed to demonstrate good cause

for delaying the proposed amendment for more than a year after the scheduling

order deadline had passed. Accordingly, the district court correctly denied the amendment.

## STANDARDS OF REVIEW

This Court reviews a grant of summary judgment de novo, viewing the evidence and drawing all reasonable inferences in favor of the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is appropriate where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Although the court views facts and inferences in the light most favorable to the non-moving party, "the mere existence of a scintilla of evidence" is insufficient; rather, "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In other words, Sullivan "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). He is required to come forward with specific facts showing a genuine issue for trial. *Id.*

The district court's denial of Sullivan's motion to amend his Complaint is reviewed for abuse of discretion. *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008). Abuse of discretion is a deferential standard, and does not permit reversal simply because the appellate court would have reached a different

result. *United States v. Medcom Carolinas, Inc*., 42 F.4th 185, 197 (4th Cir. 2022).

An abuse of discretion occurs when a district judge acts in an arbitrary or irrational

manner, fails to consider the right factors, or relies on faulty legal or factual

premises. *Id*. (citing *United States v. Welsh*, 870 F.3d 530, 536 (4th Cir. 2018)).

## ARGUMENT

**I.** **The District Court Correctly Granted Summary Judgment in UNC Health's Favor Based on Sullivan's Failure to Present Evidence of Pretext Regarding UNC Health's Legitimate, Nondiscriminatory Reason for Its Promotion Decision: the Determination of a Panel of Interviewers that Sullivan Was Not the Best-Qualified Candidate.**

An ADEA plaintiff must show an employer "fail[ed] or refuse[ed] to hire or

to discharge any individual or otherwise discriminate[d] against any individual with

respect to his compensation, terms, conditions, or privileges of employment,

because of such individual's age." 29 U.S.C. § 623(a). To establish a prima facie

case, Sullivan had to show: (1) he was a member of a protected class; (2) he

applied for an open position; (3) he was qualified for the position; and (4) he was

denied promotion under circumstances that create an inference of unlawful

discrimination. *Gurganus v. Beneficial N.C., Inc.,* 25 F. App'x 110, 111 (4th Cir.

2001). The burden for establishing a prima facie case is "not onerous." *Evans v.

Techs. Applications & Serv. Co*., 80 F.3d 954, 960 (4th Cir. 1996). UNC Health

conceded for summary judgment purposes that Sullivan had shown a prima facie

case.

14

At this point, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason; then the plaintiff may show that the reason is pretextual. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). The burden is on the employer to show a legitimate nondiscriminatory reason "is one of production, not persuasion," and it need only introduce evidence that, if believed, would support a finding that discrimination was not the cause of the action. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000); *Texas Dep't of Comm. Affairs v. Burdine,* 450 U.S. 248, 253-55 (1981); *Westmoreland v. TWC Admin. LLC,* 924 F.3d 718, 725 (4th Cir. 2019).

Once UNC Health proffers its legitimate nondiscriminatory reason, i.e., that Van Dyck out-performed Sullivan in the interview process and was deemed the best-qualified candidate, the presumption of discrimination disappears, and Sullivan must demonstrate that UNC Health's stated reason is a pretext for age discrimination *Evans,* 80 F.3d at 959. Sullivan must produce evidence "*both* that the reason [for the employer's action] was false, *and* that [age] discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993); *Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc*., 986 F.3d 711, 721 (7th Cir. 2021) (a plaintiff must present evidence suggesting the employer's "proffered reason ... [is] a lie" and "must identify such weaknesses, implausibilities, inconsistencies, or contradictions" in the employer's asserted reasons "that a

15

reasonable person could find it unworthy of credence."). A plaintiff "must do more than simply show the articulated reason is false," and "must also show that the employer discriminated against him on the basis of age," recognizing that, in some cases, eliminating the employer's justification may leave discrimination as the most likely explanation. *Laber v. Harvey*, 438 F.3d 404, 430-31 (4th Cir. 2006).

Absent direct evidence of discrimination, Sullivan must forecast sufficient circumstantial evidence to enable a reasonable jury to conclude that UNC Health's stated reason for its decision was pretextual, either because the explanation is "unworthy of credence" or by offering other forms of circumstantial evidence sufficiently probative of age discrimination. *Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244, 257 (4th Cir. 2025) (*citing Reeves*, 530 U.S. at 143). A "plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 281 (4th Cir. 2000) (*citing Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th Cir. 1989)).

Age disparity alone does not create an inference of discrimination. *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 202 (4th Cir. 1997) ("the mere fact of replacement by a younger employee is not dispositive of age discrimination."). Nor does Sullivan's assertion that the average age of the interview panel was nine years

younger than him. Sullivan cites no authority for the proposition that the relative age of decision-makers can demonstrate bias. In fact, the case law relied upon by Sullivan for this point suggests that this age difference was not substantial. *Girten v. McRentals, Inc.*, 337 F.3d 979, 982 (8th Cir. 2003) (stating that a nine-year age difference between the plaintiff and his replacement was probably insufficient to infer age discrimination).

Where, as here, relative qualifications are advanced as the nondiscriminatory reason, the employee has the burden of establishing he was the better qualified applicant, which Sullivan cannot do. *Young v. Barnhart,* 52 F. App'x 191, 194 (4th Cir. 2002) (quoting *Young v. Lehman,* 748 F.2d 194, 198 (4th Cir. 1985)). The record evidence confirms that Van Dyck was selected because he outperformed Sullivan in the interview process and was deemed best-qualified, a legitimate, nondiscriminatory reason that Sullivan has failed to rebut. The interview scores shown in the composite interview scoring grid speak for themselves: Van Dyck received higher scores from six of the seven panelists on core job-related competencies, with only one interviewer (Wells) scoring Van Dyck and Sullivan equally, and rating Kirwan as the top candidate. (Rotar Decl. at ¶27 [ECF 56-2 at p. 7], Ex. F [ECF 56-2 at p. 28]). Van Dyck received the highest total points at 130.5, Kirwan (with one fewer panel interview and, therefore, one fewer set of scores) was second at 116 points, and Sullivan was third at 110.5 points. (*Id.*)

Sullivan's third-place finish undercuts any contention that "but for" ageist bias, Sullivan would have received the promotion; in fact, had Van Dyck not been selected, Kirwan would have been next in line for the job based on the interview scores. *Turner v. Town of Narrows*, No. 25-1298, 2026 U.S. App. LEXIS 2135, at *14 (4th Cir. Jan. 28, 2026).

Rather than demonstrate superior qualifications based on the job criteria used by UNC Health, Sullivan focuses on other job criteria he deems important, such as the candidates' relative seniority at UNC Health and number of years in a supply chain role. Sullivan cannot establish pretext by relying on criteria of his own choosing, when UNC Health based its decision on other factors. *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 271 (4th Cir. 2005); *see also Hux v. City of Newport News*, 451 F.3d 311, 315 (4th Cir. 2006) ("… a plaintiff seeking to rebut an employer's reliance on inferior job qualifications cannot simply compare herself to other employees on the basis of a single evaluative factor artificially severed from the employer's focus on multiple factors in combination.").

Sullivan also objects to UNC Health's reliance on the candidates' interview performance rather than other measures of relative qualifications, but this, too, is insufficient. *Bandy v. City of Salem,* 59 F.4th 705, 712 (4th Cir. 2023) (summary judgment affirmed where evidence showed interview committee ranked a younger

18

candidate over plaintiff for a number of legitimate reasons); *Marnocha*, 986 F.3d at 721 (affirming summary judgment where younger candidate was chosen because she "outshone [the plaintiff] in her interview, positioning herself as the better candidate"); *McKay v. United States Dep't of Transp.*, 340 F.3d 695, 699-700 (8th Cir. 2003) (affirming summary judgment where interview panel unanimously favored younger job candidate over plaintiff and selected younger candidate based on superior communication skills evidenced in interview process).

Sullivan argues that UNC Health offered "shifting explanations" for its promotion decision and that "process irregularities" existed in the selection process, but the record provides no support for these assertions. UNC Health's reasons for selecting Van Dyck never changed: he outscored the other finalists in the interview process and was therefore deemed more qualified than Sullivan. Sullivan identifies no evidence in the record that UNC Health fabricated false reasons or post hoc explanations to cover age discrimination, as required to show pretext. *See Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 215 (4th Cir. 2007) (judgment as a matter of law may be appropriate if a plaintiff created only a weak issue of fact as to whether the employer's reasons were untrue).

Sullivan cites allegedly inconsistent explanations for actions taken by previous managers, but the explanations were neither inconsistent nor relevant to the promotion decision at issue. He asserts that HR stated in October 2020 that the

19

2019 restructuring was intended to reduce a top-heavy management structure (Sullivan Dep. at pp. 38-39 [ECF 88-3 at p. 11; ECF 88-7 at p. 2]), yet the department grew and added an Executive Director role under Hazziez's leadership. That the incoming VP executed a different strategy than that planned by previous leadership in 2019 does not discredit HR's explanation for the 2019 decisions or, more to the point, suggest the reasons for the April 2021 promotion are unworthy of credence.

Sullivan also claims that HR stated in an October 2020 email that he was unqualified for promotion because he lacked value analysis experience. An objective review of the email [ECF 88-7 at pp. 2-3] demonstrates that HR referenced the value analysis function only in explaining that the position posted in August 2019 was not the same as Sullivan's previous role. Again, this October 2020 commentary about the August 2019 job posting bears no relation to the April 2021 promotion at issue here.

As to the process, UNC Health used the Hiring for Excellence selection process, with multiple panelists evaluating candidates on core job-related competencies. As the district court acknowledged, Sullivan admitted in his deposition that he was not aware of any deviations from the normal hiring process. (Sullivan Dep. at p. 44 [ECF 56-1 at p. 23]). Sullivan now points to alleged discrepancies in the scoring and criteria used in the 2020 interview process. At

20

best, he points to minor discrepancies that do not cast doubt on the validity of UNC Health's explanation and, therefore, are immaterial to the pretext analysis. *Hux*, 451 F.3d at 315. This aligns with the long-established principle that a court does not decide whether an employer's reason was "wise, fair, or even correct," so long as it truly was the employer's actual reason. *Hawkins*, 203 F.3d at 279.

Sullivan points out that the external candidate, Kirwan, was not interviewed by one of the panelists, but he fails to show that this amounted to a material deviation, much less that it disadvantaged Sullivan. According to Sullivan, Rotar should have averaged the scores, rather than comparing each finalist's cumulative sums. In fact, Rotar accounted for the missing interview score in a different way, by deeming Kirwan and Van Dyck's scores essentially equivalent, although the total of Van Dyck's aggregated scores was higher. Given the relative parity between the top two candidates' scores, Rotar recommended Van Dyck for the promotion based on other job-related considerations. (Rotar Decl. at ¶¶33, 35 [ECF 56-2 at pp. 9-10], Ex. I [ECF 56-2 at p. 35]).

Had UNC Health instead averaged each candidate's rankings, as Sullivan proposes, Kirwan—not Sullivan—would have outranked Van Dyck. This further undermines any inference that the process was designed to disadvantage Sullivan based on his age, as procedural irregularities must be shown to have "directly and uniquely disadvantaged" a protected class member. *Barnes v. Charles Cnty. Pub.*

21

*Schs.*, 747 F. App'x 115, 118 (4th Cir. 2018). Sullivan's contention that Van Dyck was "pre-selected" when he was placed in an interim director role in 2020 likewise does not demonstrate discrimination, as the pre-selection of a candidate would work to the detriment of all applicants, regardless of age. *Hood-Wilson v. Bd. of Trs. of the Cmty. College of Baltimore Cnty.*, 162 F.4th 101, 108-09 (4th Cir. 2025).

Sullivan's assertion that UNC Health relied too heavily on subjective criteria to select Van Dyck also fails to show pretext. *Hux*, 451 F.3d at 315-16 (employer's use of subjective criteria is not, by itself, evidence of pretext). He does not argue that UNC Health considered irrelevant factors. In fact, Sullivan admitted in his deposition that the interview questions asked of him were generated through the Hiring for Excellence process. (Sullivan Dep. at p. 44 [ECF 88-3 at p. 12]). The record evidence shows that the panelists ranked the finalists on criteria representing the core competencies of the position, and the interviewers documented specific reasons for rating Sullivan lower than the others. UNC Health's reliance on a structured interview process involving some degree of subjectivity fails to demonstrate pretext absent evidence that the process was manipulated to disadvantage a protected employee. *Hux*, 451 F.3d at 315-16; *compare Ham v. Wash. Suburban Sanitary Comm'n*, 158 F. App'x 457, 466 (4th Cir. 2005) ("Courts have repeatedly found that an employer's decision to

22

emphasize qualities not pertinent to the job in selecting a candidate is probative of pretext.").

Finally, contrary to Sullivan's assertion, the district court correctly relied upon *Elam v. Early*, 138 F.4th 804, 816 (4th Cir. 2025), to decide that Sullivan's declaration offered in opposition to summary judgment must be disregarded to the extent it was grounded on unsupported conclusions, as opposed to personal knowledge and admissible facts. *Id*. ("conclusory and speculative statements are insufficient"). In fact, the requirement that declarations be made on personal knowledge and set out facts that would be admissible in evidence is a bedrock directive of Rule 56. *See* Fed. R. Civ. P. 56(c)(4).

## II.     The District Court Correctly Applied the ADEA's "But-For" Causation Standard.

Even if Sullivan had successfully raised a question of pretext (which he did not), he still fails to establish that "but for" his age, he would have received the promotion. Sullivan argues that the district court "improperly elevated" the summary judgment standard and required him to "negate" UNC Health's explanations. This argument misapprehends the district court's analysis and the applicable legal standard.

Because the ADEA requires a plaintiff to prove that age was the "but-for" cause of the adverse employment action, a plaintiff must show that the adverse

action would not have occurred absent the employer's discriminatory intent. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009); *see also Cole v. Family Dollar Stores of Md., Inc.*, 811 Fed. App'x 168, 172 (4th Cir. 2020) ("Regardless of the method of proof, a plaintiff retains the ultimate burden to prove by a preponderance of the evidence that age … was the 'but-for' cause of the challenged employer decision."). The district court did not require Sullivan to conclusively prove discrimination at summary judgment; instead, it properly found that Sullivan was required to present evidence from which a reasonable jury could find in his favor under the applicable proof standard. *Marnocha,* 986 F.3d at 722 (affirming summary judgment where plaintiff failed to show "but-for" causation because merely showing age was a motivating factor is not enough).

**III.    The District Court Acted Within Its Discretion in Denying Leave to Amend the Complaint Where Sullivan Failed to Demonstrate Good Cause for Belatedly Requesting Amendment, After the Scheduling Order Deadline Had Passed, Based on Facts Known to Him When the Lawsuit Commenced and "Confirmed" at a Deposition 14 Months Before Sullivan's Motion to Amend.**

Sullivan challenges the district court's denial of his motion for leave to amend his Complaint to add a retaliation claim. Sullivan filed his motion [ECF 86] on August 25, 2025, well over a year after the February 22, 2024, deadline that the scheduling order [ECF 28] established for any motion to amend pleadings. The district court denied leave to amend because Sullivan delayed filing the motion "until well after the deadline in the scheduling order and despite knowledge of the

24

alleged facts supporting that claim", and, therefore, had not shown good cause under Rule 16(b).  [ECF 92 at p. 1]

Although leave to amend should be granted under Rule 15 "when justice so requires," Fed. R. Civ. P. 15(a)(2), a party who seeks leave to amend pleadings after the deadline for doing so under the scheduling order has passed must demonstrate "good cause" under Rule 16(b) before the court considers whether amendment is proper under Rule 15(a).  *CBX Techs., Inc. v. GCC Techs, LLC*, 533 Fed. App'x 182, 183 (4th Cir. 2013); *Cook v. Howard*, 484 Fed. App'x 805, 814-15 (4th Cir. 2012); *Nourison*, 535 F.3d at 298. "Good cause" requires a party seeking relief to show that the deadline could not reasonably have been met despite the party's diligence. Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.") If the party did not act diligently, the inquiry ends and the motion must be denied. *Cook,* 484 Fed. App'x at 815 (finding no abuse of discretion where appellant had not been diligent).

Here, the district court found that Sullivan failed to demonstrate good cause for his delay in seeking to add a retaliation claim. Sullivan's argument—that the denial of the amendment should be reversed because his proposed amendment was based on "facts developed during discovery"—is unavailing. Specifically, Sullivan sought to add allegations that he complained internally of age discrimination in October 2020, that Hazziez was aware of that complaint and also participated in

25

the decision-making process for Van Dyck's promotion, and that Hazziez allowed

others in charge of that process to manipulate the selection to Sullivan's

disadvantage. [ECF 86-1 at pp. 13-15, ¶¶1-5.]

These allegations are not based on "newly discovered" facts; Sullivan knew

some of these facts when he filed his complaint in October 2022 and, by his own

admission, received confirmation of them when Rotar was deposed. Sullivan's

original Complaint filed in October 2022 contains allegations about his internal

complaint in August 2020 and his related discussion with Human Resources and

Hazziez in October 2020. [ECF 1 at ¶¶ 18, 22-23]. During his deposition in April

2024, Sullivan testified that he believed Hazziez played a role in the promotion

decision because Hazziez was the one who called to tell him that he did not get the

job. (Sullivan Dep. at pp. 169-72 [ECF 90-1 at pp. 11-14]). According to Sullivan,

his belief was "confirmed" when he received written discovery and Rotar was

deposed. [ECF. 86 at ¶ 7.] Sullivan's motion to amend filed on August 25, 2025,

stated that the deposition took place "a year ago" [ECF 86 at ¶7], and the

deposition transcript [ECF 88-2 at p. 2] shows that it occurred even earlier, on June

18, 2024.

As the district court aptly concluded, diligence is the touchstone of good

cause under Rule 16(b). Sullivan's failure to move promptly to amend despite his

undisputed knowledge of the facts allegedly giving rise to a claim prevents him

26

from establishing good cause under Rule 16(b). *See Cook*, 484 Fed. App'x at 816 (district court did not abuse discretion in denying leave to amend where the plaintiffs contemplated the addition of other "John Doe" defendants yet made no effort to undertake limited discovery to identify these individuals for almost seven months between commencing the lawsuit and serving a request for production).

Sullivan's reliance on *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172 (4th Cir. 2009) is misplaced. Sullivan cites *Matrix* for the proposition that amendments based on newly discovered facts weigh strongly in favor of granting leave. In *Matrix*, however, external circumstances outside the movant's control—specifically, delays caused by the opposing party's missed filings—prevented timely amendment. Sullivan has not, and cannot, identify any external impediment that prevented him from seeking amendment earlier based on facts that had long been in his possession.

Sullivan's reliance on Rule 15(a)'s liberal amendment policy is also misplaced at this stage of the analysis. Although Rule 15(a) provides that leave to amend should be "freely given," that liberal standard applies only after the movant has satisfied Rule 16(b)'s good cause requirement. *Cook*, 484 Fed. App'x at 814-15. Because he failed to show good cause under Rule 16(b), the court properly declined to reach the Rule 15(a) analysis, and the denial should be affirmed. *Id.*

## CONCLUSION

UNC Health respectfully requests that this Court affirm the district court's grant of summary judgment and its denial of leave to amend.

## STATEMENT REGARDING ORAL ARGUMENT

UNC Health respectfully submits that oral argument is not warranted. This appeal involves the straightforward application of well-established case law. The matters at issue may be readily decided based on the parties' respective briefs.

Dated: February 27, 2026

*s/ Jill S. Stricklin*
Jill S. Stricklin
PIERSON FERDINAND, LLP
550 N. Liberty Street, Suite 166
Winston-Salem, NC 27101
Jill.Stricklin@PierFerd.com
336.800.5955
NC State Bar No. 20145

*s/ Frances De La Guardia*
Frances De La Guardia,
PIERSON FERDINAND, LLP
555 NE 15th Street, Unit 21A
Miami, FL 33132
frances.delaguardia@pierferd.com
305.712.4385
FL State Bar No. 775762

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

This brief complies with the type-volume limits because, excluding parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature blocks, certificates of counsel, addendum, and attachments), it contains 6,439 words.

This brief complies with the typeface and type style requirements because it has been prepared in a proportionately spaced typeface using Microsoft Word, in Times New Roman, a serif type style, using 14-point font.

Dated: February 27, 2026

*s/ Jill S. Stricklin*
Jill S. Stricklin
PIERSON FERDINAND, LLP
550 N. Liberty Street, Suite 166
Winston-Salem, NC 27101
Jill.Stricklin@PierFerd.com
336.800.5955
NC State Bar No. 20145

*s/ Frances De La Guardia*
Frances De La Guardia,
PIERSON FERDINAND, LLP
555 NE 15th Street, Unit 21A
Miami, FL 33132
frances.delaguardia@pierferd.com
305.712.4385
FL State Bar No. 775762

Case No. 25-2322      *John Sullivan v. University of North Carolina Health Care System*

**1:22-CV-00847-CCE-JLW**

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2026, I electronically filed the foregoing **Response Brief of Defendant-Appellee** with the Clerk of Court using the CM/ECF system which will send notice of such filing all registered CM/ECF users. I further certify that on February 27, 2026, I served the foregoing document by third-party commercial carrier for delivery within three days to the *pro se* Plaintiff-Appellant at the following address:

John D. Sullivan
4310 Falmouth Drive, Suite 102A
Longboat Key, FL 34228

*s/ Jill S. Stricklin*
Jill S. Stricklin
PIERSON FERDINAND, LLP
550 N. Liberty Street, Suite 166
Winston-Salem, NC 27101
Jill.Stricklin@PierFerd.com
336.800.5955
NC State Bar No. 20145