NO. 25-2322

# United States Court of Appeals

*for the*

# Fourth Circuit

JOHN D. SULLIVAN

*Plaintiff-Appellant,*

– v. –

THE UNIVERSITY OF NORTH CAROLINA
HEALTH CARE SYSTEM

*Defendant-
Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF NORTH CAROLINA IN CASE
NO. 1:22-CV-847, HONORABLE CATHERINE C. EAGLES, CHIEF DISTRICT JUDGE

## *REPLY BRIEF OF APPELLANT*

John D. Sullivan, Pro Se
4310 Falmouth Drive, 102A
Longboat Key, FL 34228
(919)-923-4632
*Plaintiff-Appellant*

# TABLE OF AUTHORITIES

Cases

Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639 (4th Cir. 2002)

Jacobs v. N.C. Administrative Office of the Courts, 780 F.3d 562 (4th Cir. 2015)

Guessous v. Fairview Property Investments, LLC, 828 F.3d 208 (4th Cir. 2016)

Wannamaker-Amos v. Purem Novi, Inc., 86 F.4th 280 (4th Cir. 2023)

Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289 (4th Cir. 2010)

Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000)

Heiko v. Colombo Savings Bank, F.S.B., 434 F.3d 249 (4th Cir. 2006)

EEOC v. Sears Roebuck & Co., 243 F.3d 846 (4th Cir. 2001)

Barnes v. Charles County Public Schools

Cianci v. Pettibone Corp., 152 F.3d 723 (7th Cir. 1998)

Girten v. McRentals, Inc., 337 F.3d 979 (8th Cir. 2003)

Inman v. Klockner Pentaplast of America, Inc., 555 F.3d 335 (4th Cir. 2009)

O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308 (1996)

Hayes v. Waste Connections, Inc., 2019 U.S. App. LEXIS 11854 (4th Cir. 2019)

## DISCUSSION

### I. Ample Fourth Circuit Authority Exists Rejecting Piecemeal Analysis at Summary Judgment

This Circuit consistently rejects summary judgment where the district court fails to consider the record as a whole. Here, the District Court relied on a limited portion of UNC's evidence in granting summary judgment, warranting reversal.

### Core Principle – Evidence Must Be Viewed as a Whole

The Fourth Circuit has repeatedly warned district courts that discrimination cases cannot be resolved by examining each piece of evidence in isolation. Instead, courts must evaluate the record as a whole and determine whether the cumulative evidence would allow a reasonable jury to infer discrimination.

The court articulated this rule clearly in *Dennis v. Columbia Colleton Medical Center, Inc.*, 290 F.3d 639, 649 (4th Cir. 2002), explaining that courts may not "isolate each piece of evidence and view it in a vacuum." Rather, the evidence must be considered collectively to determine whether discriminatory intent may reasonably be inferred. In this District Court decision Sullivan has presented substantial evidence showing inconsistencies in UNC's Hiring For Excellence (HFE) processes, admitting in an executive summary its workplace is discriminatory, documents and deposition testimony by Rotar showing the hiring process in both 2019 and 2020 was poorly managed, documented and managed.

**Dissecting and Cherry Picking Evidence Not Allowed**

In Jacobs v. N.C. Administrative Office of the Courts, 780 F.3d 562 (4th Cir. 2015),

the Fourth Circuit strongly criticized a district court for granting summary judgment

after improperly dissecting the plaintiff's evidence.

The court explained that summary judgment analysis must not involve "cherry-

picking" the evidence or evaluating each fact independently. Instead, courts must

consider the cumulative force of the record. Id. at 569–70. Viewed collectively,

circumstantial evidence, including inconsistent explanations and irregularities in the

decision-making process may permit a reasonable jury to infer discrimination. The

District Court Summary Judgment decision does just that, taking specific facts out of

the whole context to fit a theory of law not wholly applicable.

**Guessous v. Fairview Property Investments, LLC**

The Fourth Circuit reiterated this rule in Guessous v. Fairview Property Investments,

LLC, 828 F.3d 208 (4th Cir. 2016). There, the court reversed summary judgment

after concluding that the district court improperly analyzed each piece of

circumstantial evidence separately.

The court explained that discrimination claims often rely on circumstantial evidence

and credibility determinations that must be resolved by a jury. Id. at 216–17. When

the evidence was viewed cumulatively, including discriminatory remarks,

inconsistencies in the employer's explanation, and suspicious timing such that the

record was sufficient for a reasonable jury to find discrimination.

**Wannamaker-Amos v. Purem Novi, Inc.**

In Wannamaker-Amos v. Purem Novi, Inc., 86 F.4th 280 (4th Cir. 2023), the Fourth Circuit emphasized that district courts may not weigh competing evidence or draw inferences against the non-moving party at summary judgment.

The court stressed that circumstantial evidence must be evaluated as a whole and that credibility determinations belong to the jury. *Id. at 295–97.* Summary judgment was reversed because the district court improperly discounted evidence that could allow a reasonable jury to infer discrimination.

**Merritt v. Old Dominion Freight Line, Inc. (Subjective Interview Criteria)**

The Fourth Circuit's decision in Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289 (4th Cir. 2010), provides particularly strong guidance in cases involving subjective hiring or promotion criteria.

In Merritt, the employer justified its hiring decision using subjective assessments such as whether the plaintiff was the "right fit" for the position. The Fourth Circuit cautioned that subjective evaluation criteria can easily mask discriminatory decision-making when they are not tied to objective qualifications or when the employer's explanation is inconsistent with the evidentiary record. Here UNCs HFE process, while consisting of subjective behavioral questions do not match with the Job Description for this position.

The court emphasized that summary judgment is improper where the plaintiff produces evidence that could allow a reasonable jury to conclude that the employer's explanation is not credible. Id. at 294–96.

**Application to But-For Causation**

Even under the ADEA's but-for causation standard, circumstantial evidence may permit a reasonable jury to infer discriminatory intent.

Where a prima facie case is established, and especially where it is conceded, the relevant inquiry at summary judgment is whether the cumulative evidence could allow a jury to disbelieve the employer's explanation and infer that discrimination was the true cause of the employment decision.

Under Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147–48 (2000), evidence discrediting the employer's explanation may allow the factfinder to infer discrimination. The Fourth Circuit's decisions in Dennis, Jacobs, Guessous, Wannamaker-Amos, Merritt, and Barnes reinforce that courts may not defeat such claims by dissecting the plaintiff's evidence piece by piece. Instead, the entire evidentiary record must be evaluated collectively.

## II. Sufficient Authority and Relevant Hiring Process Facts Show District Court Holding Is Erroneous.

Plaintiff respectfully requests the court to read the Hiring For Excellence (HFE) documentation provided by UNC. The documents explain the HFE process and provide guides that also show the rules of the road for a proper evaluation and

selection process. Appropriate citations for this documentation and supporting facts to the record are contained in this section.

What is abundantly clear amongst the three guides is that HFE has a process that when followed provides consistency and fairness in hiring. There exist documents UNC employees are required to know and follow when interviewing and managing an interview process. It is UNC's failure to live by both the spirit and letter of these guides and processes that show the basis by which Sullivan's hiring process was tantamount to pretext and discrimination.

### A. HFE – The Basics and UNC's failure to follow them

First, in using HFE UNC must know, understand and practice what is addressed in HFE LEGAL CONSIDERATIONS IN SELECTION DOCUMENT. *Doc. 88-7, pgs. 132-163.* Those considerations are three-fold. First, HFE uses a process called job analysis to analyze how a job is performed and identifies competencies required for success. *Id at 139.* Second, any selection system must be applied uniformly to all applicants" Id. Third, "when HFE is implemented as recommended, it meets the requirements of a legally defensible selection system." *Id.*

There are several basic but essential tenets to HFE for a fair hiring process.

### 1. HFE SHOULD BE ACCURATE AND EQUITABLE - Doc. 88-7 @ 187

Accuracy is the ability of an interviewing process to reliably predict candidates' job performance. *Id.* Equity assures your interviewing system gives every qualified

candidate a fair and equal chance. An equitable interviewing system is driven by valid requirements that are applied consistently. *Id.*

**2. HFE IS A PROCESS -** Doc.88-7@189-244 – Nine steps explained

The heart of Hiring for Excellence is a nine-step process for interviewing candidates, analyzing interview data, integrating the data collected by all interviewers, and making the retain/reject decision.

1. Review Candidate Materials
2. Plan the Interview
3. Open the Interview
4. Conduct the Interview
5. Close the Interview
6. Rate the Candidate
7. **Engage in Interviewer Feedback Session** In an interviewer feedback session, you'll discuss your data and your ratings with others who interviewed the same candidate, reach consensus, and make a retain-reject decision based on these ratings. This session is key to ensure an aligned selection process. See below for great details on the feedback session. Regarding the Interviewer Feedback process, Doc. 88-8@239 states the following:

> "The Hiring for Excellence interviewer *feedback session is a powerful quality control process designed to control biases and stereotypes, maintain hiring standards, and ensure fair and accurate selection.* The power of the interviewer feedback session comes from interviewers sharing the information they've collected and then evaluating targets based on all the available data, not just their own data. *The result is a profile of each candidate's strengths and weaknesses that they can use to accurately and fairly predict performance in the job. Sharing and evaluating candidate data happens in an interviewer feedback session, which is a discussion among all interviewers who gathered behavioral information about the candidates for the job.* Focusing on one candidate at a time, each interviewer shares his or her

competency ratings, highlighting strengths and areas of concern. For those competency areas where there are discrepancies between interviewers' ratings, the group discusses the behavioral data collected for that area to reach consensus on a rating for that target. *__After this process is completed, the group analyzes the candidate's profile and decides whether to retain or reject the person.__*"

When examining the case at bar with the factors noted above such as legal considerations, objectives for accuracy and equity as well as HFE's nine step process, many facts of are applicable. There is absolutely no record of UNC conducting the interviews of the candidates in any manner consistent with these three essential factors. The process lacked uniformity, clarity and equity. Clearly the scoring collected is not accurate nor fair. No evidence of UNC following the nine steps exists. The only activity that occurred was a collection of scoring sheets. (Doc. 88-8@32; Rotar email asking for scores). The record is void of any additional efforts by UNC to comport with HFE's requirements and as such is more than sufficient grounds for a jury to determine UNC's conduct was pretextual and discriminatory.

8. __Make a Decision Among Acceptable Candidates__ You and your fellow interviewers will compare acceptable candidates to make a hiring decision. By comparing candidates with the fellow interviewers, the best hiring decision can be made. When considering this step eight, the record lacks any identification of which, if any candidate is acceptable, and any comparison from which the best decision may be made is absent as well. When considering this lack of process adherence, the District Court's decision was in error as genuine issues

of fact concerning inconsistencies fuel a question of pretext exist in this area as well.

9.    **Ensure a Strong Start**

**3. HFE HAS RATINGS FOR CANDIATES** – Doc. 88-7@237

HFE uses a five-point numerical rating scale to represent the different levels of candidate qualifications.  These are:

1.    5 Much More Than Acceptable—Significantly exceeds criteria.
2.    4 More Than Acceptable—Exceeds criteria.
3.    3 Acceptable—Meets criteria for successful job performance.
4.    2 Less Than Acceptable— Fails to meet criteria for job performance.
5.    1 Much Less Than Acceptable—Significantly below criteria required.

A candidate receiving a 3 (Acceptable) rating is the standard for successful job performance and does not mean "average." Rating a candidate Acceptable in every target predicts effective performance in the job.  It should be noted Sullivan met the criteria for successful job performance, and had UNC considered factors other than the panel interview scores as HFE requires , he would have been the best candidate for selection.  Sullivan created the function, had superior performance while directing the group (*Doc. 88-3; pgs 140, 201-206 and 221*), hired four teammates to staff the function in less than two years, created the terms and conditions templates not only for contracts but purchase orders as well, created a contracts guide, process flows and achieved many other significant career accomplishments that showed his being the best qualified candidate for the position. *See Doc 88-3; @ pg 44 (pg 171, l. 19-*

*pg.172, l 17 of Sullivan Deposition). See also Doc. 88-3 @ 56 (pgs. 218 l.22 – pg.*

*219 l. 19 of Sullivan Deposition).*

## 4. MAKING A HIRING DECISION  88-7 @ 243

HFE also provides that if you have two or three good candidates that are evaluated as

acceptable for the job, compare these and other guidelines:

1. Review the ratings for each candidate to compare strengths and areas for improvement.
2. Highlight strengths and areas for improvement for each candidate.
3. Ask all panel interviewers to independently rank the candidates; then, compare rankings by asking team members to justify them using target data.

***Usually, a clear candidate emerges, often however not the one with the highest total***

***scores.*** It's the candidate's complete picture, a combination of their strengths and

weaknesses that moves them ahead of the other candidates.

In applying these requirements to the subject hiring process for Sullivan, UNC did

not follow this key step when making a hiring decision, and failed on several fronts.

No ratings for each candidate occurred where strengths and areas for improvement

were compared. No highlighting of strengths and areas for improvement for each

candidate took place.  None of the panel interviewers independently ranked the

candidates, compared the rankings and asked team members to justify those rankings.

Regarding the candidate to be hired, Rotar simply asked for panel interviewer scores

by email (Doc. 88-8@32; Rotar email asking for scores). Contrast this with how

Sullivan when hiring Gary Hall, used the HFE process, noted Mr. Hall's difficulty in

answering the behavioral like questions that are part and parcel to HFE. However,

when considering Mr. Hall's candidacy in total, hired him. *Doc. 88-3 @ 17 (Sullivan Deposition explaining the hiring of Mr. Hall; Deposition pgs. 66-68 inclusive)*.

## 5. PANEL TEAM INTERVIEWING 88-7@ 246- 248

There is a list of requirements for panel interviewing which was applicable in this case as well. Key factors of panel team interviews that were not followed include the following. One, Sullivan was not able to ask questions in the Background Review. Two, each interviewer did not take notes though it is recommended for all the candidate's responses. Only three panel participants (Hartnett, Root and Hill) filled out comments in conjunction with their score sheet. Four panelists did not (Perry, Wells, Bednar and Rotar). Additionally, nowhere in the record are there any score sheets populated by Rotar. See Doc. 88-7 @ pgs 250-259; See also Doc. 88-2@ 101. Each interviewer simply generated their ratings and sent them in to Rotar. Three, and finally, there is no record of any interviewer feedback session.

### *B. UNC's Additional Failures in Following HFE Process*

The ensuing information shows how UNC failed to follow its own designated process:

**1. Ensure all interview participants asked the same questions.** Here, the table below shows clearly that each candidate had an HFE interviewer in all five categories. However, each candidate did not have the same HFE interviewer by category. In fact, only one panel interviewer conducted interviews from the same category. Scoring candidates under such a scenario, particularly without accurate

records or appropriate post interview sessions makes a proper selection not possible

and is another example of UNC;s hiring behavior that raises the question of pretext.

This chart shows how each candidate had a different panel for each interview session:

| HFE Questioning Categories | Josh Van Dyck | John/Jack Sullivan Appellant | Shawn Kirwin |
|---|---|---|---|
| | | | |
| Technical/Professional Knowledge | K. Hartnett R. Rotar | K. Hartnett A. Perry | K. Hartnett A. Hill |
| Decision Making | O. Wells | R. Rotar O. Wells | A. Perry |
| Building Partnerships | P. Bednar | P. Bednar | O. Wells |
| Planning & Organizing | A. Hill | A. Hill | T. Root |
| Motivational Fit | T. Root | T. Root | R. Rotar |

*See Doc. 88-8 @pgs. 11/12 for JVD; 88-8@26 for Sullivan and 88-8@45 for Kirwin*

## 2. *Unreviewed scoring disparities driven by three HFE interviewers* taint interview and selection process.

Irregular scoring patterns, particularly when driven by subjective evaluations, may

support an inference of discrimination. *Dennis v. Columbia Colleton Med. Ctr., Inc.,*

290 F.3d 639, 646 (4th Cir. 2002);   In Dennis, this court held that inconsistencies and

irregularities in the employer's explanation for a hiring decision can demonstrate

pretext and should be evaluated by a jury.  The court elaborated  by stating that a

plaintiff may prove pretext by showing  "weaknesses, implausibilities,

inconsistencies, incoherencies, or contradictions in the employer's proffered

legitimate reasons."

In this case, the scoring grid shows a highly unusual distribution of scoring as 17 of

20 points between Sullivan and JVD coming from three connected panelists and

USCA4 Appeal: 25-2322      Doc: 22      Filed: 03/09/2026      Pg: 13 of 25

minimal difference among the other panel members. That type of statistical irregularity falls squarely within the "inconsistencies and implausibilities" recognized in *Dennis*. See also *Heiko v. Colombo Savings Bank, F.S.B.* 434 F.3d 249 (4th Cir. 2006) (Fourth Circuit held that disparities in qualifications or evaluation scores can show pretext, particularly when the employer relies on subjective criteria) .

The interview scoring grid below further supports an inference of pretext. Of the twenty-point difference between Sullivan and JVD, seventeen points (85% of the difference) were generated by only three panelists: Hartnett (9), Root (4) and Rotar (4) who were either organizational peers or connected through reporting relationships. Note Root reported to Rotar and Hartnett was a peer to JVD. Hartnett also reported to Rotar in a previous role. The remaining four panelists (Perry, Wells, Bednar and Hill) collectively only a three-point difference. See *Sullivan Dec., Doc 88-5, pgs. 50-59.* Absent the process rigor provided by no feedback session, no comparable team decision occurred, no review of ratings from which to compare strengths and areas for improvement took place, and finally, no ranking of the candidates occurred. The sum provides more than sufficient detail of inconsistent hiring conduct creating sufficient questions for a jury regarding pretext and discrimination that *Dennis* and *Heiko* address. The table below shows the final scoring for each candidate by panel interviewer.

| Director of Contracting & Sourcing Grid | | | | |
|---|---|---|---|---|
| | Jack Sullivan | Josh VanDyck | Shaun Kirwan | Duane Hess |
| Ana Elis Perry | 16 | 17 | 19 | N/A |
| Omar Wells | 16 | 16 | 18 | N/A |
| Paul Bednar | 15.5 | 16.5 | N/A | N/A |
| Teresa Root | 15 | 19 | 20 | N/A |
| Aaron Hill | 17 | 18 | 18 | N/A |
| Ryan Rotar | 16 | 20 | 18 | N/A |
| Kathy Harnett | 15 | 24 | 23 | N/A |
| **Total Score** | **110.5** | **130.5** | **116** | N/A |

Here, UNC's sole reliance on poorly documented panel scores, coupled with its failures to conduct the key feedback session, make a team decision amongst acceptable candidates and a team hiring decision for the preferred candidate, shows not only its failure to follow its own processes. It also provides more than sufficient detail of inconsistent hiring conduct creating sufficient questions for a jury regarding pretext and discrimination.

## III. Rotar Deposition and HFE Documents Present Questions of Pretext

A most difficult issue UNC cannot answer in this instance is reconciling Ryan Rotar's deposition testimony to the record and its showing of pretext. Rotar stated he

did not conduct interviews or fill the 2019 first Director position as he was too busy with competing priorities. Doc 88-2@24 (Rotar Deposition pgs. 89:10-90:4). Yet, the evidence proves otherwise as interview activities were going on through December of 2019. These inconsistencies are pretextual in nature and should be reviewed by a trier of fact, not a judge as a matter of law.

| Document Page | Document Type | Comments | Document Page | Document Type | Comments |
|---|---|---|---|---|---|
| 88-6@119 | Slide | Showing Currently Interviewing | 88-6@201 | Email | Asking Rachel Frankling to interview |
| 88-6@193 | Email | Rotar asking Mark Dozier to interview | 88-6@202 | Email | Asking Duane Hess to interview |
| 88-6@195 | Email | Asking Christine (?) to interview | 88-3@ pgs. 124:17-125:13 | Conversation with Sullivan | UNC will interview Sullivan |

Those pretext questions and difficulties continue for UNC as Rotar is unable to reconcile his written word via email with what actually was occurring regarding the 2021 interview process. See below:

| Document Page | Document Type | Comments | Document Page | Document Type | Comments |
|---|---|---|---|---|---|
| 88-2@58 (Depo pages 224:24-225:21 | Deposition | Rotar explaining how he was not in charge of interview process and pre-work done he | 88-8@87<br><br>88-2@56 (Rotar Depo pgs. 215: 3-222:25) - 58 | Email<br><br>Rotar testimony | Summarizing results of interviews<br><br>Email summarizing interview results; providing comments |

USCA4 Appeal: 25-2322      Doc: 22      Filed: 03/09/2026      Pg: 16 of 25

|  |  | was not aware of. |  |  | not appropriate with HFE process, thus tainting results. |
|---|---|---|---|---|---|
| 88-2@ 51- (Depo of Rotar, pgs. 194:16- 196:8) | Deposition | Rotar enters scores on score sheet for Sullivan but not JVD and Kirwin and cannot explain why. | 88- 2@56(Rotar Depo pgs. 215:3- 222:25); 88-2@62 (Rotar Depo pgs. 241:23- 242:5) | Rotar explaining scoring sheets and system. Rotar explain wholhow we was directed to interview | Examples of failure to practice what HFE requires and thus is evidence of pretext. |

## IV. Under Barnes v. Charles County Public Schools, UNC's Failure to Tie Its Interview Criteria to the Job Description Supports a Strong Inference of Pretext

### 1. Barnes Requires Alignment Between the Job Description and the Evaluation Criteria

The district court relied on *Barnes v. Charles County Public Schools*, to reject

Plaintiff's pretext evidence. In Barnes, this Court found no inference of pretext where

the interview panel asked all candidates the same job-related questions that bore

logical relation to job duties, notwithstanding subjective elements.

Properly applied, however, Barnes underscores why summary judgment was

improper here. In Barnes, the Fourth Circuit affirmed summary judgment because the

employer demonstrated that its interview questions and evaluation criteria were

uniformly applied and aligned with the job's stated requirements.

UNC's own written job description (Doc. 88-3@198-199) for the HCS Director of Sourcing/Contracting establishes the governing requirements. That description defines the role as a senior leadership position responsible for the development and implementation of contracting and sourcing objectives, policies, and procedures; day-to-day administrative leadership of contracting and sourcing teams; contract negotiation and sourcing strategy; budget planning, KPIs, operational improvement, and departmental performance management; and supervisory leadership and stakeholder engagement.

Despite the centrality of these responsibilities, UNC produced no documentation showing that any candidate was interviewed or evaluated using the job description.

## 2. UNC's Five Evaluation Criteria Do Not Consider the Job Description

Rather than evaluate candidates against the job description, UNC claims it relied on five interview criteria: (a) Technical/Professional Knowledge; (b) Decision Making; (c) Building Partnerships; (d) Planning and Organizing; and (e) Motivational Fit. UNC produced no evidence explaining how these criteria were derived from the job description or how they were intended to measure the position's core responsibilities. When comparing the Job Description to UNC's interview criteria, a fundamental disconnect occurs.

a. Technical / Professional Knowledge

The job description emphasizes contract negotiations, sourcing strategy, cost management, and supply chain operations. UNC provided no evidence defining what

"technical/professional knowledge" meant in the interview context, what subject matter was tested, or how it related to the specific responsibilities described in the job description.

b. Decision Making

The job description references decision-making in the context of budgeting, operational performance, and strategic sourcing initiatives. UNC produced no evidence showing that interview questions assessed decision-making in those job-specific contexts.

c. Building Partnerships

The job description emphasizes relationships with physicians, clinicians, administrators, and vendors to implement supply chain strategy. UNC produced no evidence that interview questions assessed those partnerships or measured experience relevant to those responsibilities.

d. Planning and Organizing

The job description highlights strategic planning, KPI development, budget oversight, and departmental performance management. UNC did not show that interview questions evaluated these job-specific functions.

e. Motivational Fit

The job description does not reference "motivational fit" or any analogous concept. UNC provided no definition, benchmarks, or explanation tying this criterion to the responsibilities of the position.

### 3. Unlike Barnes, UNC Cannot Show That Its Criteria Were Designed to Prevent Pretext

In Barnes, the employer demonstrated that interview criteria reflected the job description and were applied uniformly. Here, UNC produced no evidence that the job description was used during interviews, that the criteria were derived from the job description, or that interview questions were designed to measure the job's stated responsibilities.

### 4. Properly Applied, Barnes Supports Reversal

Barnes illustrates that summary judgment may be appropriate only where an employer adheres to its job description, asks uniform questions tied to that description, and applies its criteria consistently. Because those safeguards are absent here, a reasonable jury could conclude that UNC's stated reasons were not its true reasons.

### 5. Under Fourth Circuit Law, the Absence of Documentation Linking the Job Description to the Evaluation Process Is Probative of Pretext.

Fourth Circuit precedent recognizes that when an employer claims reliance on structured or neutral selection criteria, the absence of contemporaneous documentation supporting that claim may support an inference of pretext. See *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 646–47 (4th Cir. 2002); *EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 852–53 (4th Cir. 2001).

Here, UNC asserts reliance on defined criteria and "core competencies," yet produced no documentation showing that the job description informed the interview process.

Further, irregularities and a lack of uniformity abounds. UNC cannot produce the

questions asked of the candidates as they do not exist. Second, evaluating candidates

then in relation to the actual job itself, as opposed to behavioral based questions is

fraught with risk and questions how UNC can show equity and uniformity. This

absence of evidence, particularly when combined with subjectivity and inconsistency

as noted in section A addressing UNC's failures under the HFE process, permits a

reasonable jury to disbelieve UNC's explanation and conclude that its stated reasons

were pretextual.

Sullivan wishes to make the Court aware of a calculation mistake in his opening

brief from page 31. When reviewing Doc. 88 Attachment/Exhibit 9 @ 63., one

thing stands out. The average of the ages of the panel was fifteen (15) years

younger than Sullivan, as opposed to nine (9) as originally written. See Cianci v.

Pettibone Corp., 152 F.3d 723, 727—28 (7th Cir. 1998) (explaining that a ten-year

gap may be presumptively substantial, but smaller gaps remain probative where the

record shows age was important to the hiring employer). Similarly, in Girten v.

McRentals, Inc., the Eighth Circuit emphasized that a nine-year age difference is not

dispositive either way and must be evaluated in light of the totality of the evidence.

337 F.3d 979, 983 (8th Cir. 2003). *Inman v. Klockner Pentaplast of America, Inc.,*

555 F.3d 335 (4th Cir. 2009) (determined terminating and replacing a 58 year old

executive with a significantly younger employee was sufficient evidence of age

discrimination for consideration by a jury). Finally, in *O'Connor v. Consolidated*

USCA4 Appeal: 25-2322     Doc: 22     Filed: 03/09/2026     Pg: 22 of 25

*Coin Caterers Corp.*, 517 U.S. 308 (1996), Justice Scalia wrote for the majority that the relevant inquiry is whether the replacement is substantially younger when considering age issues, and that substantial difference is a far greater indicator for consideration.

Under Reeves v. Sanderson Plumbing Products, Inc., once a plaintiff establishes a prima facie case and produces evidence permitting a reasonable jury to disbelieve the employer's explanation, the factfinder may infer discrimination. 530 U.S. 133, 147–48 (2000). Consistent with Reeves, this Court has repeatedly emphasized that summary judgment is inappropriate where inconsistencies, procedural irregularities, and subjective decision-making collectively undermine the employer's stated reasons. See *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289 (4th Cir. 2010); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639 (4th Cir. 2002). When the full evidentiary record is considered collectively as required by this Court's precedent, a reasonable jury could conclude that UNC's stated reasons were not its true reasons.

## CONCLUSION

This case presents the Court a unique opportunity to enhance its historical and recent holdings and provide greater clarity on issues of summary judgment in discrimination matters where pretext is a key factor in showing that discriminatory conduct. Appellant Sullivan submits that UNC's behavior since 2019 through the new Sourcing and

Contracting Director being appointed AFTER Sullivan's retirement shows a continuous stream of conduct that is actionable.

*Before* - Pretextual inconsistencies occurred in 2019 when Sullivan was told that despite his outstanding performance, his position was being eliminated due to a "Top Heavy" management structure. Fast forward less than two years later to April, 2021 when the new organization was created and more leaders were in place than existed in 2019 and UNC evidenced inconsistent conduct with a shifting and changing story regarding why Sullivan's original position was eliminated. See Doc. 88-3@ 212-219 inclusive. See also Doc. 88-3 @ 209-210. Sullivan was on the outside looking in, despite making the DEI office and his Supply Chain Vice President aware of these actions. Where an employer changes its original reason for its failure to ressign and re-hire an outstanding candidate, "such substantial changes to [an employer's] proffered reason . . . permits an inference of pretext." Hayes v. Waste Connections, Inc. 2019 US App Lexis 11854, page 15 (4th Circuit 2019). Further, UNC's assessment and admission in the summer of 2020 that it housed a discriminatory workplace did nothing to ensure equity for Sullivan and others similarly situated.

*During* – Once the Directorship was open for reconsideration in late 2020, Sullivan applied and was denied again the opportunity to reclaim his position. UNC's failure to follow its own hiring process, combined with case law showing why not evaluating candidates' capabilities in conjunction with a viable Job Description and work history is another example of discriminatory pretext in this hiring situation.

*After* – Once the 2020/early 2021 hiring process was completed, the record explaining how and why JVD was the selected candidate was riddled with inconsistencies and errors, significantly disadvantaging and impacting Sullivan. The final pretext action by UNC actually occurred when they reposted the Sourcing Director position one week to the day AFTER Sullivan's retirement.

Consistent with this Court's prior holdings, UNC's assertion, and the District Court's holding that Sullivan must essentially affirmatively prove the reason why UNC engaged in unlawful discrimination to survive summary judgment should be rejected. To do so

> "would be anomalous to hold that a plaintiff cannot sustain a discrimination claim without engaging in precisely the type of speculation we have repeatedly disavowed. Just as speculation is insufficient to prove a discrimination claim, a plaintiff need not speculate as to the alleged discriminator's motive to survive summary judgment. "
> *Wannamaker @ 430.*

Respectfully Submitted,

John D. Sullivan, Pro Se
Appellant
March 9, 2026

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7), I certify that this brief complies with the applicable type-volume limitation. This brief contains approximately 4,426 words, excluding the parts of the brief exempted by Rule 32(f).

Respectfully submitted,

John D. Sullivan
Pro Se Appellant
Date: March 9, 2026